**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No.: _____

GOVERNMENT EMPLOYEES INSURANCE CO., GEICO
INDEMNITY CO., GEICO GENERAL INSURANCE
COMPANY and GEICO CASUALTY CO.,

     Plaintiffs,                                   **Jury Trial Demand**

vs.

CARLOS A. BLANCO, M.D., MENAR WAHOOD, D.O., BEST
COMMUNITY CARE INC f/k/a ANA BEST CARE INC, ZAIDE
LAURIDO, A.P.R.N., SIMPLE THERAPY GROUP, INC., JUAN
C. CORDOVI, and RAUL EMILIO SOBREDO MARIN,

     Defendants.

_____/

## COMPLAINT

Plaintiffs, Government Employees Insurance Co., GEICO Indemnity Co., GEICO General

Insurance Company and GEICO Casualty Co. (collectively "GEICO" or "Plaintiffs"), sue the

Defendants and allege as follows:

1.    This action seeks to recover more than $2,000,000.00 that the respective

Defendants wrongfully obtained from GEICO by submitting:

(i)    thousands of fraudulent and unlawful no-fault ("no-fault", "personal injury
protection", or "PIP") insurance charges through Defendant Best Community Care
Inc f/k/a Ana Best Care Inc ("Best Community") for purported physical therapy
services, patient examinations, percutaneous electrical nerve stimulation ("PENS")
treatment, and "extracorporeal shockwave therapy" ("shockwave therapy"); and

(ii)    thousands of fraudulent and unlawful PIP insurance charges through Simple
Therapy Group, Inc. ("Simple Therapy") for purported physical therapy services
and patient examinations.

(the purported physical therapy services, patient examinations, PENS treatment, and shockwave therapy are referred to hereinafter as the "Fraudulent Services").

2.　　The Fraudulent Services purportedly were provided to individuals who claimed to have been involved in automobile accidents and were eligible for insurance coverage under GEICO PIP insurance policies ("Insureds").

3.　　In addition, GEICO seeks a declaration that it is not legally obligated to pay reimbursement of more than $75,000.00 in pending, fraudulent and unlawful PIP claims that the respective Defendants have submitted through Best Community and Simple Therapy, because at all relevant times:

(i)　　the Defendants operated in violation of Florida law, including: (a) the licensing and operating requirements set forth in the Florida Health Care Clinic Act, Fla. Stat. § 400.990 et seq. (the "Clinic Act"); (b) Florida's False and Fraudulent Insurance Claims Statute, Fla. Stat. § 817.234(7) (the "False and Fraudulent Insurance Claims Statute"); (c) Florida's Physical Therapy Practice Act, Fla. Stat. § 486.011-486.172 (the "Physical Therapy Act"); and (d) Florida's Motor Vehicle No-Fault Law, Fla. Stat. §§ 627.730-627.7405 (the "No-Fault Law"), thereby rendering them ineligible to collect PIP insurance benefits in the first instance, and rendering their PIP insurance charges noncompensable and unenforceable;

(ii)　　the Fraudulent Services were not medically necessary, and were provided – to the extent that they were provided at all – pursuant to a pre-determined fraudulent protocol designed to financially enrich the Defendants, rather than to provide medically necessary treatment to the Insureds who purportedly were subjected to them;

(iii)　　in many cases, the Fraudulent Services never were legitimately provided in the first instance;

(iv)　　the billing codes used for the Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to fraudulently and unlawfully inflate the charges submitted to GEICO; and

(v)　　in many cases, Best Community and Simple Therapy unlawfully billed GEICO for "physical therapy" services performed by massage therapists and unlicensed/unsupervised individuals.

4.　　The Defendants at all relevant times have known that:

     (i)     Defendants Best Community and Simple Therapy operated in violation of Florida law, including: (a) the licensing and operating requirements set forth in the Clinic Act; (b) the False and Fraudulent Insurance Claims Statute; (c) the Physical Therapy Act; and (d) the No-Fault Law, thereby rendering them ineligible to collect PIP insurance benefits in the first instance, and rendering their PIP insurance charges noncompensable and unenforceable;

     (ii)    the Fraudulent Services were not medically necessary, and were provided – to the extent that they were provided at all – pursuant to a pre-determined fraudulent protocol designed to financially enrich the Defendants, rather than to provide medically necessary treatment to the Insureds who purportedly were subjected to them;

     (iii)   in many cases, the Fraudulent Services never were provided in the first instance;

     (iv)   the billing codes used for the Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to fraudulently and unlawfully inflate the charges submitted to GEICO; and

     (v)    in many cases, the Defendants unlawfully billed GEICO for "physical therapy" services performed by massage therapists and unlicensed/unsupervised individuals.

5.     As such, the Defendants do not now have – and never had – any right to be compensated for the Fraudulent Services that were billed to GEICO through Best Community and Simple Therapy.

6.     The charts annexed hereto as Exhibits "1" and "2" set forth large, representative examples of the fraudulent claims that have been identified to date that the respective Defendants have submitted, or caused to be submitted to GEICO by mail through Best Community and Simple Therapy.

7.     The Defendants' interrelated fraudulent and unlawful schemes began no later than 2020 and have continued uninterrupted since that time. As a result of the Defendants' fraudulent and unlawful schemes, GEICO has incurred damages of more than $2,000,000.00.

## THE PARTIES

### I.      Plaintiffs

8.      Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. (collectively, "GEICO") are Nebraska corporations with their principal places of business in Chevy Chase, Maryland. GEICO is authorized to conduct business and to issue automobile insurance policies in Florida.

### II.      Defendants

9.      Defendant Carlos A. Blanco, M.D. ("Blanco") resides in and is a citizen of Florida. Blanco was licensed to practice medicine in Florida on August 13, 1996. Blanco falsely purported to serve as the medical director of Best Community between December 2022 and the present, and Simple Therapy between December 2023 and the present. Blanco also purported to personally perform or directly supervise many of the Fraudulent Services on behalf of Simple Therapy.

10.      Defendant Menar Wahood, D.O. ("Wahood") resides in and is a citizen of Illinois. Wahood was licensed to practice medicine in Florida on February 21, 2018. Wahood falsely purported to serve as the medical director of Simple Therapy between January 2020 and October 2023. Wahood also purported to personally perform or directly supervise many of the Fraudulent Services on behalf of Simple Therapy.

11.      Defendant Best Community is a Florida corporation with its principal place of business in Hialeah, Florida. Best Community was incorporated on or about August 6, 2020, had Defendant Zaide Laurido, A.P.R.N. ("Laurido") as its president and owner, and was used as a vehicle by Laurido to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers. Best Community purported to operate four properly-licensed health care clinics at the following locations: (i) 5901 NW 183 Street, Suite 124, Hialeah, Florida; (ii) 10700 Caribbean

4

Boulevard, Suite 308, Miami, Florida; (iii) 5901 NW 183 Street, Suite 136, Hialeah, Florida; and (iv) 6570 Griffin Road, Suites 101 and 102, Davie, Florida (collectively, the "Best Community Clinics").

12.     Defendant Laurido resides in and is a citizen of Florida. Laurido was licensed as an advanced practice registered nurse in Florida on August 24, 2016, but has never been a licensed physician, chiropractor, or dentist. Laurido owned and controlled Best Community, purported to perform many of the Fraudulent Services on behalf of Best Community, and used Best Community as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

13.     Defendant Simple Therapy is a Florida corporation with its principal place of business in Miami Lakes, Florida. Simple Therapy was incorporated on or about April 12, 2012, between at least 2020 and June 2023 had Defendant Juan C. Cordovi ("Cordovi") as its owner, between at least June 2023 and the present had Defendant Raul Emilio Sobredo Marin ("Marin") as its owner, and was used as a vehicle by Cordovi and Marin to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

14.     Defendant Cordovi resides in and is a citizen of Florida. Cordovi is not currently licensed to practice any health care profession in Florida. Cordovi owned and controlled Simple Therapy between at least 2020 and June 2023, and used Simple Therapy as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

15.     Defendant Marin resides in and is a citizen of Florida. Marin is not currently licensed to practice any health care profession in Florida. Marin owned and controlled Simple Therapy between at least June 2023 and the present, and used Simple Therapy as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

### III.   Other Relevant Individuals

16.   Although not presently named as Defendants in this action, Luis Barreto, P.A. ("Barreto"), France T. Occy, D.O. ("Occy"), Wilfredo Ruben Batista, A.P.R.N. ("Batista"), Linette Botana, A.P.R.N. ("Botana"), Greter Sanchez Rodriguez, A.P.R.N. ("Rodriguez"), Yamilet Garcia ("Garcia"), Yaumel Perez Sotolongo ("Sotolongo"), and Jose Zulueta ("Zulueta") are relevant to understanding Plaintiffs' claims in this action.

17.   Barreto was licensed as a physician assistant in Florida on April 17, 1995. Barreto purported to perform Fraudulent Services on behalf of Simple Therapy, at the direction of Marin.

18.   Barreto has a history of professional misconduct which resulted in discipline from the Florida State Board of Medicine (the "Florida Board of Medicine"). In particular, in 1992 the Florida Board of Medicine disciplined Barreto – who has never been licensed as a physician in Florida – for falsely representing that he was a cardiac surgeon and had been practicing as a doctor for 20 years, and for practicing medicine beyond the scope of his license as a physician assistant.

19.   Upon information and belief, Barreto's public history of professional discipline – which can be located by prospective employers through a simple internet search – has made it difficult for Barreto to obtain legitimate employment as a physician assistant, and made him amenable to participation in the fraudulent and unlawful activities at Simple Therapy.

20.   Occy was licensed to practice medicine in Florida on April 24, 2013. Occy purported to perform health care services on behalf of Simple Therapy, at the direction of Cordovi.

21.   Batista was licensed as an advanced practice registered nurse in Florida on July 19, 2021. Batista purported to perform Fraudulent Services on behalf of Simple Therapy, at the direction of Marin.

22.     Botana was licensed as an advanced practice registered nurse in Florida on July 12, 2021. Botana purported to perform Fraudulent Services on behalf of Best Community, at the direction of Laurido.

23.     Rodriguez was licensed as an advanced practice registered nurse in Florida on June 13, 2023. Rodriguez purported to perform Fraudulent Services on behalf of Best Community, at the direction of Laurido.

24.     Garcia was licensed as a massage therapist in Florida on December 13, 2010, was employed by or associated with Best Community, and purported to perform Fraudulent Services on behalf of Best Community, at the direction of Laurido.

25.     Sotolongo was licensed as a massage therapist in Florida on October 17, 2022, was employed or associated with Best Community, and purported to perform Fraudulent Services on behalf of Best Community, at the direction of Laurido.

26.     Zulueta was licensed as a massage therapist in Florida on August 8, 2003, was employed by or associated with Simple Therapy, and purported to perform Fraudulent Services on behalf of Simple Therapy, at the direction of Marin.

## JURISDICTION AND VENUE

27.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a)(1) because the total matter in controversy, exclusive of interest and costs, exceeds the jurisdictional threshold of $75,000.00, and is between citizens of different states.

28.     This Court also has original jurisdiction pursuant to 28 U.S.C. § 1331 over claims brought under 18 U.S.C. § 1961 et seq. (the Racketeer Influenced and Corrupt Organizations ("RICO") Act).

29.     In addition, this Court has supplemental jurisdiction over the subject matter of the claims asserted in this action pursuant to 28 U.S.C. § 1367.

30.     Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the Southern District of Florida is the District where one or more of Defendants reside and because this is the District where a substantial amount of the activities forming the basis of the Complaint occurred.

## ALLEGATIONS

## I.     An Overview of Pertinent Law Governing No-Fault Insurance Reimbursement

31.     Florida has a comprehensive statutory system designed to ensure that motor vehicle accident victims are compensated for their injuries. The statutory system is set forth in the No-Fault Law, which requires automobile insurers to provide personal injury protection benefits ("PIP Benefits") to insureds.

32.     Under the No-Fault Law, an insured can assign their right to PIP Benefits to health care services providers in exchange for those services. Pursuant to a duly executed assignment, a health care services provider may submit claims directly to an insurance company in order to receive payment for medically necessary services, using the required claim forms, including the Health Care Financing Administration insurance claim form (known as the "HCFA-1500 form").

33.     In order for a health care service to be eligible for PIP reimbursement, it must be "lawfully" provided.

34.     Pursuant to the No-Fault Law, "lawful" or "lawfully" means "in substantial compliance with all relevant applicable criminal, civil, and administrative requirements of state and federal law related to the provision of medical services or treatment."

35.     Thus, health care services providers, including clinics licensed under the Clinic Act, may not recover PIP Benefits for health care services that were not provided in substantial

8

compliance with all relevant applicable criminal, civil, and administrative requirements of Florida and federal law related to the provision of the underlying services or treatment.

36.     Pursuant to the Clinic Act, and subject to certain limited exceptions, a license issued by the Florida Agency for Health Care Administration ("AHCA") is required in order to operate a "clinic" in Florida. The Clinic Act defines "clinic" to mean "an entity where health care services are provided to individuals and which tenders charges for reimbursement for such services, including a mobile clinic and a portable equipment provider."

37.     However, the Clinic Act provides an exemption from the clinic licensing requirements for:

> A sole proprietorship, group practice, partnership, or corporation that provides health care services by licensed health care practitioners . . . that is wholly owned by one or more licensed health care practitioners, or the licensed health care practitioners set forth in this paragraph and the spouse, parent, child, or sibling of a licensed health care practitioner if one of the owners who is a licensed health care practitioner is supervising the business activities and is legally responsible for the entity's compliance with all federal and state laws. However, a health care practitioner may not supervise services beyond the scope of the practitioner's license … .

See Fla. Stat. § 400.9905(4)(g)(emphasis added).

38.     Therefore, in order to qualify for this "wholly owned" exemption under the Clinic Act, the licensed health care practitioner who "wholly owns" the practice has a continuing obligation to supervise the business activities of the clinic and remain legally responsible for the clinic's compliance with all federal and state laws. Any failure to fulfill these requirements automatically voids a practice's exemption.

39.     Furthermore, in order for a health care practice to qualify for the "wholly owned" exemption to the Clinic Act's licensing requirements, the practice may not provide services that are outside of the scope of the supervising practitioner-owner's professional license.

9

40. A health care practice operating in Florida without a valid exemption from the health care clinic licensing requirements and that does not otherwise have a license, operates unlawfully under Florida law.

41. Unless they are operating pursuant to an exemption from the clinic licensing requirements, clinics operating in Florida not only must obtain a clinic license, but must "appoint a medical director or clinic director who shall agree in writing to accept legal responsibility for [certain enumerated] activities on behalf of the clinic."

42. In this context, a clinic medical director also must "[r]eview any patient referral contracts or agreements executed by the clinic".

43. In addition, a clinic medical director must "[e]nsure that all practitioners providing health care services or supplies to patients maintain a current active and unencumbered Florida license", and "[e]nsure that all health care practitioners at the clinic have active appropriate certification or licensure for the level of care being provided."

44. In addition, pursuant to the Clinic Act, a clinic medical director must "[s]erve as the clinic records owner as defined in [Fla. Stat. §] 456.057." Pursuant to Fla. Stat. § 456.057(10), "[a]ll records owners shall develop and implement policies, standards, and procedures to protect the confidentiality and security of the medical record," and all "[e]mployees of records owners shall be trained in these policies, standards, and procedures."

45. Furthermore, pursuant to the Clinic Act, no Florida health care clinic may operate without the legitimate, day-to-day supervision of a physician-medical director.

46. Pursuant to the Clinic Act, "[a] charge or reimbursement claim made by or on behalf of a clinic that is required to be licensed under this part but that is not so licensed, or that is otherwise operating in violation of this part, regardless of whether a service is rendered or whether

10

the charge or reimbursement claim is paid, is an unlawful charge and is noncompensable and unenforceable. A person who knowingly makes or causes to be made an unlawful charge commits theft within the meaning of, and punishable as provided in, [Fla. Stat. §] 812.014." <u>See</u> Fla. Stat. § 400.9935(3).

47.     Thus, pursuant to both the No-Fault Law and the Clinic Act, clinics that operate in violation of the Clinic Act's licensing, medical director, or other operating requirements are not entitled to collect PIP Benefits, whether or not the underlying health care services were medically necessary or actually provided.

48.     Furthermore, pursuant to the No-Fault Law, a "wholly owned" practice may not recover PIP Benefits unless the practitioner-owner is a physician, chiropractor, or dentist, or unless the practice otherwise has a clinic license and a physician on staff as medical director. A practice that is "wholly owned" by an advanced practice registered nurse, but that does not have a clinic license and medical director, may not collect PIP Benefits.

49.     Under the False and Fraudulent Insurance Claims Statute, it is unlawful for a health care provider to engage in the general business practice of waiving, or failing to make a good-faith effort to collect, co-payments or deductibles from patients with PIP insurance.

50.     Failure to make a good-faith effort to collect co-payments or deductibles renders the charges submitted by a health care provider unlawful and noncompensable.

51.     Pursuant to the No-Fault Law, insurers such as GEICO are only required to pay PIP Benefits for "medically necessary" services. At the same time, a health care services provider, including a clinic organized under the Clinic Act, is only eligible to receive PIP Benefits for medically necessary services.

52.     Pursuant to the No-Fault Law, "medically necessary" means:

11

a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:

(i)     in accordance with generally accepted standards of medical practice;

(ii)    clinically appropriate in terms of type, frequency, extent, site, and duration; and

(iii)   not primarily for the convenience of the patient, physician, or other health care provider.

53.     Prior to January 1, 2013, the No-Fault Law permitted health care services providers, including clinics licensed under the Clinic Act, to collect PIP Benefits for massage therapy and for services performed by massage therapists.

54.     However, the No-Fault Law was amended, effective January 1, 2013, to prohibit PIP reimbursement for massage or for any services provided by massage therapists.

55.     Pursuant to the Physical Therapy Act: (i) massage therapists may not practice physical therapy, or hold themselves out as being able to practice physical therapy, unless they have an actual license to practice physical therapy, as opposed to massage therapy; and (ii) unlicensed and unsupervised individuals may not practice physical therapy or hold themselves out as being able to practice physical therapy.

56.     Pursuant to the Physical Therapy Act and the No-Fault Law, insurers such as GEICO are not required to pay for any services performed by massage therapists or for physical therapy services that are unlawfully performed by unlicensed and unsupervised individuals.

57.     Pursuant to the No-Fault Law, insurers such as GEICO are not required to pay PIP Benefits:

(i)     for any service or treatment that is "upcoded", meaning that it is billed using a billing code that would result in payment greater in amount than would be paid using a billing code that accurately describes the services performed;

(ii)    to any person who knowingly submits a false or misleading statement relating to

12

the claim or charges; or

(iii)     with respect to a bill or statement that does not substantially meet the billing requirements set forth in the No-Fault Law.

58.     The No-Fault Law's billing requirements provide – among other things – that all PIP billing must, to the extent applicable, comply with the instructions promulgated by the Centers for Medicare & Medicaid Services ("CMS") for the completion of HCFA-1500 forms, as well as the guidelines promulgated by the American Medical Association ("AMA") in connection with the use of current procedural terminology ("CPT") codes.

59.     The instructions promulgated by CMS for the completion of HCFA-1500 forms require – among other things – that all HCFA-1500 forms set forth, in Box 31, the identity of the individual health care practitioner who personally performed or directly supervised the underlying health care services.

60.     To "directly supervise" a service, a supervising health care practitioner "must be present in the office suite and [be] immediately available to furnish assistance and direction throughout the performance of the procedure. It does not mean that the physician (or other supervising practitioner) must be present in the room when the procedure is performed."

61.     Pursuant to the No-Fault Law, insurers are not required to pay PIP Benefits to health care providers that misrepresent, in their billing, the identity of the individual licensed health care practitioners who performed or directly supervised the underlying services.

## II.     The Defendants' Interrelated Fraudulent and Unlawful Schemes

62.     Since at least 2020, and continuing through the present day, the Defendants conceived and implemented interrelated fraudulent schemes in which they billed GEICO – and upon information and belief as set forth herein, other Florida automobile insurers – millions of

13

dollars for medically unnecessary, illusory, unlawfully rendered, and otherwise non-reimbursable services.

**A.    The Unlawful Operation of Best Community in Violation of the Clinic Act, and Best Community's Unlawful Recovery of PIP Benefits in Violation of the No-Fault Law**

63.    As part of the fraudulent and unlawful scheme at the Best Community Clinics, Laurido and Best Community operated the Best Community Clinics in violation of the Clinic Act.

64.    Between at least 2020 and December 2022, the Best Community Clinics did not have clinic licenses or medical directors.

65.    Instead, between at least 2020 and December 2022, the Best Community Clinics – which were owned by Laurido, an advanced practice registered nurse – purported to operate under the "wholly owned" exemption from the Clinic Act's licensing, medical director, and other regulatory requirements.

66.    However, under the No-Fault Law, a "wholly owned" practice may not recover PIP Benefits unless the owner is a physician, chiropractor, or dentist, or unless the practice otherwise has a clinic license and a physician on staff as medical director.

67.    Laurido is not – and has never been – licensed as a physician, chiropractor, or dentist.

68.    Between at least 2020 and December 2022, because the Best Community Clinics were purportedly owned by Laurido – an advanced practice registered nurse – and did not have a clinic license, they were ineligible to collect PIP reimbursement in the first instance.

69.    Furthermore, the Best Community Clinics could only qualify for the "wholly owned" exemption if they were owned by a licensed health care practitioner who legitimately supervised the business activities and remained legally responsible for their compliance with all federal and state laws.

14

70.     Laurido never legitimately supervised the business activities of the Best Community Clinics, and instead directed the submission of the fraudulent and unlawful charges through the Best Community Clinics to GEICO and other insurers.

71.     Indeed, given the fraudulent and unlawful treatment and billing activities described herein, there is no way that Laurido could have legitimately supervised the business activities of the Best Community Clinics.

72.     Even so, between at least 2020 and December 2022, all of the PIP billing that Laurido and Best Community submitted through Best Community to GEICO and other insurers falsely represented that Best Community was entitled to payment on the charges, when in fact it was not.

73.     Upon information and belief based on public records, including Best Community's clinic licensing applications, in or around late 2022 Laurido and Best Community grew concerned that insurers would discover that the Best Community Clinics were ineligible to recover PIP Benefits because they were "wholly owned" by an advanced practice registered nurse, rather than a physician, chiropractor, or dentist, and did not otherwise have clinic licenses or physicians on staff as medical directors.

74.     Accordingly, in or around late 2022, Laurido and Best Community sought to obtain clinic licenses for the Best Community Clinics, which in turn required them to retain a physician to serve as medical director at the Best Community Clinics.

75.     However, if Laurido and Best Community recruited a legitimate physician to serve as a legitimate medical director at the Best Community Clinics, the physician actually would be obligated to fulfill the statutory requirements applicable to a clinic medical director. By extension, any such legitimate medical director would impede Laurido and Best Community's ability to use

the Best Community Clinics as vehicles to submit a large amount of fraudulent and unlawful PIP billing to GEICO and other Florida automobile insurers.

76. Accordingly, Laurido and Best Community required a physician willing to falsely pose as the "medical director" at the Best Community Clinics, but who – in actuality – would not even attempt to fulfill the statutory requirements applicable to a clinic medical director, and thereby permit Laurido and Best Community to use the Best Community Clinics as vehicles to submit a large amount of fraudulent and unlawful PIP billing to GEICO and other insurers.

77. Therefore, in or around December 2022, Laurido and Best Community recruited and retained Blanco, a licensed physician who in exchange for compensation was willing to falsely pose as the legitimate medical director of the Best Community Clinics, and obtained clinic licenses for the Best Community Clinics.

78. In order to circumvent Florida law and induce the AHCA to grant clinic licenses to the Best Community Clinics, Laurido and Best Community entered into a secret scheme with Blanco. In exchange for compensation from Laurido and Best Community, Blanco agreed to falsely represent and did misrepresent, to the AHCA, to the patients who sought treatment at Best Community, and to the insurers including GEICO that received PIP claims from Best Community, that he was the true medical director at the Best Community Clinics, and that he truly fulfilled the statutory requirements applicable to clinic medical directors at the Best Community Clinics.

79. However, Blanco never genuinely served as medical director at the Best Community Clinics. Instead, from the beginning of his association with the Best Community Clinics as their supposed "medical director", Blanco ceded true decision-making and oversight regarding health care services at Best Community, and the resulting billing, to Laurido.

16

80.     Blanco never legitimately served as medical director at the Best Community Clinics, inasmuch as he never conducted systematic reviews of the Best Community Clinics' billings to ensure that the billings were not fraudulent or unlawful, and never even made any attempt to discover the unlawful charges submitted through Best Community, much less take any immediate corrective action.

81.     Nor did Blanco ensure that all health care practitioners at Best Community had active appropriate certification or licensure for the level of care being provided.

82.     Nor did Blanco provide legitimate, day-to-day supervision over the Best Community Clinics, or legitimately serve as the Best Community Clinics' records owner.

83.     Had Blanco legitimately served as Best Community's medical director, Blanco would have noted, among other things, that Best Community was – as set forth herein – operating in pervasive violation of Florida law, including the Clinic Act, the False and Fraudulent Insurance Claims Statute, the Physical Therapy Act, and the No-Fault Law, and would have taken immediate corrective action.

84.     Blanco unlawfully permitted Laurido to dictate the manner in which Insureds would be treated at Best Community, and to dictate the manner in which health care services at Best Community would be billed to GEICO and other insurers, because he wanted to continue profiting through Best Community's fraudulent and unlawful PIP billing.

85.     Laurido used the façade of Blanco's "appointment" as Best Community's supposed "medical director" to do indirectly what she was forbidden from doing directly – namely: (i) to operate a clinic without a legitimate medical director; and (ii) to use Best Community as a vehicle to submit a large amount of fraudulent and unlawful PIP billing to GEICO and other insurers.

86.     In the claims identified in Exhibit "1", the Defendants' PIP charges were fraudulent and unlawful in that they falsely represented to GEICO that Best Community was compliant with Florida law and eligible to receive PIP reimbursement in the first instance.

**B.      The Unlawful Operation of Simple Therapy in Violation of the Clinic Act**

87.     Because Cordovi and Marin were not licensed health care professionals, they could not obtain a health care clinic license for Simple Therapy, lawfully operate Simple Therapy, or use Simple Therapy as a vehicle to submit PIP billing to GEICO and other insurers, unless Cordovi and Marin retained a licensed physician to serve as Simple Therapy's medical director.

88.     However, if Cordovi, Marin, and Simple Therapy recruited a legitimate physician to serve as the legitimate medical director at Simple Therapy, the physician actually would be obligated to fulfill the statutory requirements applicable to a clinic medical director. By extension, any such legitimate medical director would impede Cordovi's and Marin's ability to use Simple Therapy as a vehicle to submit a large amount of fraudulent and unlawful PIP billing to GEICO and other Florida automobile insurers.

89.     Accordingly, Cordovi and Marin required a physician willing to falsely pose as the "medical director" at Simple Therapy, but who – in actuality – would not even attempt to fulfill the statutory requirements applicable to a clinic medical director, and thereby permit Cordovi and Marin to use Simple Therapy as a vehicle to submit a large amount of fraudulent and unlawful PIP billing to GEICO and other insurers.

90.     Therefore, in or about January 2020, Cordovi recruited and retained Wahood, a licensed physician who in exchange for compensation was willing to falsely pose as the legitimate medical director of Simple Therapy. Wahood then falsely purported to serve as the medical director of Simple Therapy from January 2020 through October 2023.

91.     Then, in or about November 2023, Marin recruited and retained Blanco, a licensed physician who, like Wahood before him, was willing to falsely pose as the legitimate medical director of Simple Therapy in exchange for compensation. Blanco then falsely purported to serve as the medical director of Simple Therapy from December 2023 until the present.

92.     In order to circumvent Florida law and induce the AHCA to maintain Simple Therapy's licensure and to permit Simple Therapy to operate as a clinic, Cordovi and Marin entered into secret schemes with Wahood and Blanco, respectively. In exchange for compensation from Simple Therapy, Cordovi, and Marin, Wahood and Blanco agreed to falsely represent and did misrepresent, to the AHCA, to the Insureds who sought treatment at Simple Therapy, and to the insurers including GEICO that received PIP claims from Simple Therapy, that they were the true medical directors at Simple Therapy, and that they truly fulfilled the statutory requirements applicable to clinic medical directors at Simple Therapy.

93.     However, Wahood and Blanco never genuinely served as medical directors at Simple Therapy. Instead, from the beginning each of their associations with Simple Therapy, Wahood and Blanco ceded true decision-making and oversight regarding health care services at Simple Therapy, and the resulting billing, to Cordovi and Marin, respectively.

94.     Wahood and Blanco never legitimately served as medical directors at Simple Therapy, inasmuch as they never conducted systematic reviews of Simple Therapy's billings to ensure that the billings were not fraudulent or unlawful, and never even made any attempt to discover the unlawful charges submitted through Simple Therapy, much less take any immediate corrective action.

95.     Nor did Wahood and Blanco ensure that all health care practitioners at Simple Therapy had active appropriate certification or licensure for the level of care being provided.

96.     Nor did Wahood and Blanco provide legitimate, day-to-day supervision over the Simple Therapy clinic, or legitimately serve as the Simple Therapy clinic's records owners.

97.     Had Wahood and Blanco legitimately served as medical directors of Simple Therapy, they would have noted, among other things, that Simple Therapy was – as set forth herein – operating in pervasive violation of Florida law, including the Clinic Act, the False and Fraudulent Insurance Claims Statute, the Physical Therapy Act, and the No-Fault Law, and would have taken immediate corrective action.

98.     Wahood and Blanco unlawfully permitted Cordovi and Marin to dictate the manner in which Insureds would be treated at Simple Therapy, and to dictate the manner in which health care services at Simple Therapy would be billed to GEICO and other insurers, because they wanted to continue profiting through Simple Therapy's fraudulent and unlawful PIP billing.

99.     Cordovi and Marin used the façade of Wahood and Blanco's "appointments" as Simple Therapy's supposed "medical directors" to do indirectly what they were forbidden from doing directly – namely: (i) to operate a clinic without a legitimate medical director; (ii) to engage in unlicensed medical decision-making with respect to the Insureds who sought treatment at Simple Therapy; and (iii) to use Simple Therapy as a vehicle to submit a large amount of fraudulent and unlawful PIP billing to GEICO and other insurers.

100.     In the claims identified in Exhibit "2", the Defendants' PIP charges were fraudulent and unlawful in that they misrepresented that Simple Therapy was compliant with Florida law and eligible to receive PIP reimbursement in the first instance.

C.   **The Fraudulent and Unlawful Billing for Physical Therapy Services Performed by Massage Therapists and Unlicensed/Unsupervised Individuals at the Best Community Clinics and Simple Therapy**

101.   As part of their fraudulent and unlawful schemes, the Defendants billed GEICO for "physical therapy" services provided to GEICO Insureds at the Best Community Clinics and Simple Therapy.

102.   In the claims identified in Exhibits "1" and "2", the purported "physical therapy" services constituted the substantial majority of the services that the respective Defendants billed through Best Community and Simple Therapy to GEICO.

103.   In the claims for "physical therapy" services identified in Exhibits "1" and "2", the services were unlawfully performed – to the extent that they were performed at all – by massage therapists and unlicensed/unsupervised individuals, including Garcia and Sotolongo at the Best Community Clinics, and Zulueta at Simple Therapy.

104.   The Defendants were aware of the fact that they could not legally recover PIP Benefits for services performed by massage therapists or unlicensed/unsupervised individuals.

105.   As a result, and in order to conceal the fact that massage therapists and unlicensed/unsupervised individuals performed the purported "physical therapy" services that were unlawfully billed through Best Community and Simple Therapy, the Defendants deliberately omitted any reference to the massage therapists and/or unlicensed/unsupervised individuals associated with Best Community or Simple Therapy on the HCFA-1500 forms that they used to bill for the putative physical therapy services.

106.   Instead, in the claims for physical therapy services identified in Exhibit "1", Best Community, Laurido, and Blanco routinely and falsely represented that Laurido had performed or directly supervised the "physical therapy" services.

107.    Similarly, in the claims for physical therapy services identified in Exhibit "2", Simple Therapy, Cordovi, Marin, Wahood, and Blanco routinely and falsely represented that physicians and advanced practice registered nurses, including Blanco, Occy, Batista, Botana, and Rodriguez, had performed or directly supervised the "physical therapy" services.

108.    In the claims for the putative physical therapy services identified in Exhibits "1" and "2", the Defendants routinely fraudulently misrepresented that the services were lawfully provided and reimbursable, when in fact they were neither lawfully provided nor reimbursable, because:

(i)     the purported physical therapy services were performed – to the extent they were performed at all – by massage therapists and unlicensed/unsupervised individuals, in contravention of Florida law;

(ii)    Best Community and Simple Therapy could not lawfully recover PIP Benefits for the purported physical therapy services, because they were performed by massage therapists and/or unlicensed/unsupervised individuals; and

(i)     the Defendants systematically fraudulently misrepresented and concealed the identities of the individuals who either personally performed or directly supervised the putative physical therapy services.

**D.    The Defendants' Unlawful General Business Practice of Failing to Make a Good-Faith Effort to Collect Deductibles from Their Patients.**

109.    The Defendants knew that, if they made a legitimate, good-faith effort to collect PIP insurance deductibles from their patients, it would impede their ability to carry out the fraudulent and unlawful scheme described herein. For instance, if the Defendants made legitimate efforts to collect deductibles, Insureds would be less likely to continue presenting to the Best Community Clinics and Simple Therapy for the medically unnecessary Fraudulent Services.

110.    Accordingly, as part and parcel of their fraudulent and unlawful schemes, the Defendants unlawfully engaged in the general business practice of waiving, or failing to make a

good-faith effort to collect, PIP deductibles from their patients in violation of the False and Fraudulent Insurance Claims Statute.

111.     In keeping with this fact, in almost all of the thousands of bills (i.e., the HCFA-1500 forms) submitted through Best Community and Simple Therapy to GEICO for the Defendants' Fraudulent Services, the respective Defendants represented that they did not collect any money, whether it be a co-payment or a deductible, from the patients.

112.     In the claims identified in Exhibits "1" and "2", the Defendants routinely falsely represented that the underlying health care services were lawfully provided and reimbursable, when in fact they were neither lawfully provided nor reimbursable because the Defendants engaged in the unlawful general business practice of waiving, or failing to make a good-faith effort to collect, PIP deductibles from their patients in violation of the False and Fraudulent Insurance Claims Statute.

**E.      The Defendants' Fraudulent Treatment and Billing Protocols**

113.     Most of the Insureds whom the Defendants purported to treat were involved in relatively minor accidents. At the same time, almost none of the Insureds whom the Defendants purported to treat suffered from any significant injuries or health problems as a result of the relatively minor accidents they experienced.

114.     Even so, in the claims identified in Exhibits "1" and "2", the respective Defendants purported to subject almost every Insured to a medically unnecessary course of "treatment" that was provided pursuant to pre-determined, fraudulent protocols designed to maximize the billing that they could submit to insurers, including GEICO, rather than to provide medically necessary treatment to the Insureds who purportedly were subjected to them.

23

115.    The Defendants purported to provide their pre-determined fraudulent treatment protocols to the Insureds in the claims identified in Exhibits "1" and "2" without regard for the Insureds' individual symptoms or presentation, or – in many cases – the total absence of any actual continuing medical problems arising from any actual automobile accidents.

116.    Each step in the Defendants' fraudulent treatment protocols was designed to falsely reinforce the rationale for the previous step and provide a false justification for the subsequent step, and thereby permit the Defendants to generate and falsely justify the maximum amount of fraudulent PIP billing for each Insured.

117.    No legitimate physician, clinic, or other health care provider would permit the fraudulent treatment and billing protocols described below to proceed under his, her, or its auspices.

118.    The Defendants permitted the fraudulent treatment and billing protocols described below to proceed under their auspices because: (i) the Best Community Clinics and Simple Therapy were, at all relevant times, operating in violation of the Clinic Act, without legitimate oversight or medical directors who legitimately fulfilled their statutory duties as medical directors; and (ii) the Defendants sought to profit from the fraudulent billing they submitted to GEICO and other insurers.

**1.      The Defendants' Fraudulent and Unlawful Charges for Initial Examinations**

119.    As an initial step in their fraudulent treatment and billing protocols, the Defendants purported to provide many of the Insureds in the claims identified in Exhibits "1" and "2" with an initial examination.

120.    The purported initial examinations then were billed to GEICO in the following manner:

(i)     in the claims identified in Exhibit "1", Best Community, Laurido, and Blanco billed the initial examinations to GEICO under CPT codes 99204 and 99203, typically resulting in a charge of $400.00 or $350.00 for each initial examination that they purported to provide.

(ii)    in the claims identified in Exhibit "2", Simple Therapy, Cordovi, Marin, Wahood, and Blanco billed the initial examinations to GEICO under CPT code 99203, typically resulting in a charge of between $280.00 and $380.00 for each initial examination that they purported to provide.

121.    Pursuant to the American Medical Association's CPT Assistant, which governs reimbursement of PIP claims, the use of CPT code 99204 to bill for an initial patient examination represented – among other things – that: (i) the practitioner who performed the examination spent at least 45 minutes of time performing the examination; and (ii) the practitioner who performed the examination engaged in legitimate "moderate complexity" medical decision-making in connection with the examination.

122.    Pursuant to the CPT Assistant, the use of CPT code 99203 to bill for an initial patient examination represented – among other things – that: (i) the practitioner who performed the examination spent at least 30 minutes of time performing the examination; and (iii) the practitioner who performed the examination engaged in legitimate "low complexity" medical decision-making in connection with the examination.

123.    In the claims for initial examinations identified in Exhibits "1" and "2", the charges for the initial examinations were fraudulent in that they misrepresented the Defendants' eligibility to collect PIP Benefits in the first instance.

124.    In fact, and as set forth herein, Best Community and Simple Therapy never were eligible to collect PIP Benefits, inasmuch as they were operated in violation of Florida law.

125.     As set forth below, the charges for the initial examinations identified in Exhibits "1" and "2" also were fraudulent in that they misrepresented the nature, extent, and results of the initial examinations.

**a.     Misrepresentations Regarding the Amount of Time Spent on the Initial Examinations**

126.     In the claims for initial examinations that are identified in Exhibits "1" and "2", the respective Defendants misrepresented and exaggerated the amount of time that the examining health care practitioners spent performing the purported examinations.

127.     As set forth in Exhibits "1" and "2", the Defendants submitted almost all of their billing for initial examinations under CPT codes 99203 and 99204, and thereby represented that the health care practitioners who purported to perform the initial examinations spent at least either 30 (when billed under CPT code 99203) or 45 (when billed under CPT code 99204) minutes of time performing the examinations.

128.     In fact, in the claims for initial examinations identified in Exhibits "1" and "2", no health care practitioner ever spent even 15 minutes of time performing the examination, much less 30 or 45 minutes.

129.     For instance, and in keeping with the fact that the initial examinations allegedly provided through Best Community and Simple Therapy did not take more than 15 minutes of time to perform, the Defendants and their associates used template forms in purporting to conduct the initial examinations.

130.     The template forms that the Defendants and their associates used in purporting to provide the initial examinations set forth a very limited range of examination parameters.

131.    The only time performing the examination that was reflected in the limited range of examination parameters consisted of brief patient interviews and limited examinations of the Insureds' musculoskeletal systems.

132.    These brief interviews and limited examinations did not require any health care practitioner associated with Best Community or Simple Therapy to spend more than 15 minutes of time performing the examination.

133.    Moreover, the purported initial examinations in the claims identified in Exhibits "1" and "2" were not legitimately performed at all, inasmuch as the outcomes of the putative examinations were pre-determined to result in false soft tissue injury diagnoses and medically unnecessary treatment recommendations, regardless of the Insureds' actual individual circumstances and presentation. These false and predetermined examinations did not require the examining health care practitioners to spend more than 15 minutes performing the examinations.

134.    In the claims for initial examinations identified in Exhibits "1" and "2", the Defendants routinely falsely represented that the examinations took 30 or 45 minutes of time to perform in order to create a false basis for their charges under CPT codes 99203 and 99204, because examinations billable under CPT codes 99203 and 99204 are reimbursable at a higher rate than examinations that require less time to perform.

**b.    Misrepresentations Regarding the Extent of Medical Decision-Making**

135.    Pursuant to the CPT Assistant, there are four potential levels of medical decision-making in which a health care practitioner can engage in connection with an initial patient examination – namely: (i) straightforward medical decision-making; (ii) low complexity medical decision-making; (iii) moderate complexity medical decision-making; and (iv) high complexity medical decision-making.

136.    Pursuant to the CPT Assistant, the complexity of medical decision-making is measured by: (i) the number of diagnoses and/or management options to be considered; (ii) the amount and/or complexity of the medical records, diagnostic tests, and other information to be considered; and (iii) the risk of complications, morbidity, and mortality, as well as co-morbidities associated with the patient's presenting problems, the diagnostic procedures, and/or the possible management options.

137.    For an initial patient examination to legitimately entail "low complexity" medical decision-making, so as to meet the requirements for the use of CPT code 99203, the examination typically must, among other things, involve: (i) the review and analysis of some of the patient's medical records or information regarding the patient's history obtained from an independent historian; and (ii) at least some real risk of morbidity associated with the patient's presenting problems, the diagnostic procedures, and/or the possible management options for the patient.

138.    For an initial patient examination to legitimately entail "moderate complexity" medical decision-making, so as to meet the requirements for the use of CPT code 99204, the examination typically must, among other things, involve: (i) chronic illness, acute illness with systemic symptoms or complications, or an undiagnosed problem with an uncertain prognosis; (ii) the review and analysis of a larger amount of the patient's medical records/history than would be required to satisfy "low complexity" medical decision-making; and (iii) at least a moderate risk of morbidity associated with the patient's presenting problems, the diagnostic procedures, and/or the possible management options for the patient.

139.    In the claims for initial examinations identified in Exhibits "1" and "2", when the respective Defendants billed GEICO for putative initial examinations using CPT codes 99204 and 99203, they falsely represented that the health care practitioners who purported to conduct the

examinations engaged in some legitimate, moderate complexity (when billed under CPT code 99204) or low complexity (when billed under CPT code 99203) medical decision-making in connection with the examinations.

140. In actuality, the purported initial examinations did not involve any legitimate medical decision-making at all.

141. Rather, in the claims for initial examinations identified in Exhibits "1" and "2": (i) the initial examinations did not involve the retrieval, review, or analysis of any meaningful amount of medical records, diagnostic tests, or other information; (ii) there was no risk of significant complications or morbidity – much less mortality – from the Insureds' minor soft-tissue injury complaints, to the extent that they ever had any complaints arising from automobile accidents at all; and (iii) the Defendants and their associates did not consider any significant number of diagnoses or treatment options for Insureds during the initial examinations, and provided a substantially similar, pre-determined sprain/strain or similar soft tissue injury "diagnoses" for most Insureds, regardless of their true individual circumstances or presentation.

142. For example:

(i)     On March 6, 2020, an Insured named AH was involved in an automobile accident. The contemporaneous police report indicated that AH's vehicle was drivable following the accident. The police report further indicated that AH was not injured and did not complain of any pain at the scene. In keeping with the fact that AH was not seriously injured, AH did not visit any hospital emergency room following the accident. To the extent that AH experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, on March 11, 2020, Occy purported to conduct an initial examination of AH at Simple Therapy. To the extent that Occy performed the examination in the first instance, Occy did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Occy did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Occy provided AH with the false list of objectively unverifiable soft tissue injury "diagnoses" that Occy provided to other Insureds. Furthermore, neither AH's presenting problems, nor the treatment plan provided to AH by Simple Therapy, Cordovi, Wahood, and Occy presented any risk of

significant complications, morbidity, or mortality. To the contrary, AH did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Simple Therapy, Cordovi, Wahood, and Occy consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to AH. Even so, Simple Therapy, Cordovi, and Wahood billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Occy engaged in some legitimate, low complexity medical decision-making during the purported examination.

(ii)    On April 17, 2020, an Insured named AM was involved in an automobile accident. The contemporaneous police report indicated that AM's vehicle was drivable following the accident. The police report further indicated that AM was not injured and did not complain of any pain at the scene. In keeping with the fact that AM was not seriously injured, AM did not visit any hospital emergency room following the accident. To the extent that AM experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, on April 23, 2020, Occy purported to conduct an initial examination of AM at Simple Therapy. To the extent that Occy performed the examination in the first instance, Occy did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Occy did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Occy provided AM with the false list of objectively unverifiable soft tissue injury "diagnoses" that Occy provided to other Insureds. Furthermore, neither AM's presenting problems, nor the treatment plan provided to AM by Simple Therapy, Cordovi, Wahood, and Occy presented any risk of significant complications, morbidity, or mortality. To the contrary, AM did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Simple Therapy, Cordovi, Wahood, and Occy consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to AM. Even so, Simple Therapy, Cordovi, and Wahood billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Occy engaged in some legitimate, low complexity medical decision-making during the purported examination.

(iii)   On November 20, 2020, an Insured named GV was involved in an automobile accident. The contemporaneous police report indicated that GV's vehicle was drivable following the accident. The police report further indicated that  GV was not injured and did not complain of any pain at the scene. In keeping with the fact that GV was not seriously injured, GV did not visit any hospital emergency room following the accident. To the extent that GV experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, on November 24, 2020, Occy purported to conduct an initial examination of GV at Simple Therapy. To the extent that Occy performed the examination in the first instance, Occy did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Occy did not consider any significant number of diagnoses or

management options in connection with the examination. Instead, Occy provided GV with the false list of objectively unverifiable soft tissue injury "diagnoses" that Occy provided to other Insureds. Furthermore, neither GV's presenting problems, nor the treatment plan provided to GV by Simple Therapy, Cordovi, Wahood, and Occy presented any risk of significant complications, morbidity, or mortality. To the contrary, GV did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Simple Therapy, Cordovi, Wahood, and Occy consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to GV. Even so, Simple Therapy, Cordovi, and Wahood billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Occy engaged in some legitimate, low complexity medical decision-making during the purported examination.

(iv)     On January 18, 2021, an Insured named MP was involved in an automobile accident. The contemporaneous police report indicated that MP's vehicle was drivable following the accident. The police report further indicated that MP was not injured and did not complain of any pain at the scene. In keeping with the fact that MP was not seriously injured, MP did not visit any hospital emergency room following the accident. To the extent that MP experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, on January 28, 2021, Occy purported to conduct an initial examination of MP at Simple Therapy. To the extent that Occy performed the examination in the first instance, Occy did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Occy did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Occy provided MP with the false list of objectively unverifiable soft tissue injury "diagnoses" that Occy provided to other Insureds. Furthermore, neither MP's presenting problems, nor the treatment plan provided to MP by Simple Therapy, Cordovi, Wahood, and Occy presented any risk of significant complications, morbidity, or mortality. To the contrary, MP did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Simple Therapy, Cordovi, Wahood, and Occy consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to MP. Even so, Simple Therapy, Cordovi, and Wahood billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Occy engaged in some legitimate, low complexity medical decision-making during the purported examination.

(v)      On March 20, 2021, an Insured named JR was involved in an automobile accident. The contemporaneous police report indicated that JR's vehicle was drivable following the accident. The police report further indicated that JR was not injured and did not complain of any pain at the scene. In keeping with the fact that JR was not seriously injured, JR did not visit any hospital emergency room following the accident. To the extent that JR experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, on March 22, 2021, Laurido purported to conduct an initial examination of JR at Best Community. To the extent

that Laurido performed the examination in the first instance, Laurido did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Laurido did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Laurido provided JR with the false list of objectively unverifiable soft tissue injury "diagnoses" that Laurido provided to other Insureds. Furthermore, neither JR's presenting problems, nor the treatment plan provided to JR by Best Community and Laurido presented any risk of significant complications, morbidity, or mortality. To the contrary, JR did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Best Community and Laurido consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to JR. Even so, Best Community and Laurido billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Laurido engaged in some legitimate, low complexity medical decision-making during the purported examination.

(vi)     On July 6, 2021, an Insured named PS was involved in an automobile accident. The contemporaneous police report indicated that PS's vehicle was drivable following the accident. The police report further indicated that PS was not injured and did not complain of any pain at the scene. In keeping with the fact that PS was not seriously injured, PS did not visit any hospital emergency room following the accident. To the extent that PS experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, on July 8, 2021, Occy purported to conduct an initial examination of PS at Simple Therapy. To the extent that Occy performed the examination in the first instance, Occy did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Occy did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Occy provided PS with the false list of objectively unverifiable soft tissue injury "diagnoses" that Occy provided to other Insureds. Furthermore, neither PS's presenting problems, nor the treatment plan provided to PS by Simple Therapy, Cordovi, Wahood, and Occy presented any risk of significant complications, morbidity, or mortality. To the contrary, PS did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Simple Therapy, Cordovi, Wahood, and Occy consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to PS. Even so, Simple Therapy, Cordovi, and Wahood billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Occy engaged in some legitimate, low complexity medical decision-making during the purported examination.

(vii)    On August 4, 2021, an Insured named EC was involved in an automobile accident. The contemporaneous police report indicated that EC's vehicle was drivable following the accident. The police report further indicated that EC was not injured and did not complain of any pain at the scene. In keeping with the fact that EC was not seriously injured, EC did not visit any hospital emergency room following the

accident. To the extent that EC experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, on August 17, 2021, Occy purported to conduct an initial examination of EC at Simple Therapy. To the extent that Occy performed the examination in the first instance, Occy did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Occy did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Occy provided EC with the false list of objectively unverifiable soft tissue injury "diagnoses" that Occy provided to other Insureds. Furthermore, neither EC's presenting problems, nor the treatment plan provided to EC by Simple Therapy, Cordovi, Wahood, and Occy presented any risk of significant complications, morbidity, or mortality. To the contrary, EC did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Simple Therapy, Cordovi, Wahood, and Occy consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to EC. Even so, Simple Therapy, Cordovi, and Wahood billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Occy engaged in some legitimate, low complexity medical decision-making during the purported examination.

(viii)   On September 11, 2021, an Insured named SI was involved in an automobile accident. The contemporaneous police report indicated that SI's vehicle was drivable following the accident. The police report further indicated that SI was not injured and did not complain of any pain at the scene. In keeping with the fact that SI was not seriously injured, SI did not visit any hospital emergency room following the accident. To the extent that SI experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, on September 15, 2021, Laurido purported to conduct an initial examination of SI at Best Community. To the extent that Laurido performed the examination in the first instance, Laurido did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Laurido did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Laurido provided SI with the false list of objectively unverifiable soft tissue injury "diagnoses" that Laurido provided to other Insureds. Furthermore, neither SI's presenting problems, nor the treatment plan provided to SI by Best Community and Laurido presented any risk of significant complications, morbidity, or mortality. To the contrary, SI did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Best Community and Laurido consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to SI. Even so, Best Community and Laurido billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Laurido engaged in some legitimate, low complexity medical decision-making during the purported examination.

(ix)     On December 17, 2021, an Insured named LC was involved in an automobile accident. The contemporaneous police report indicated that LC's vehicle was drivable following the accident. The police report further indicated that LC was not injured and did not complain of any pain at the scene. In keeping with the fact that LC was not seriously injured, LC did not visit any hospital emergency room following the accident. To the extent that LC experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, on December 22, 2021, Laurido purported to conduct an initial examination of LC at Best Community. To the extent that Laurido performed the examination in the first instance, Laurido did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Laurido did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Laurido provided LC with the false list of objectively unverifiable soft tissue injury "diagnoses" that Laurido provided to other Insureds. Furthermore, neither LC's presenting problems, nor the treatment plan provided to LC by Best Community and Laurido presented any risk of significant complications, morbidity, or mortality. To the contrary, LC did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Best Community and Laurido consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to LC. Even so, Best Community and Laurido billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Laurido engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(x)      On May 27, 2022, an Insured named JJ was involved in an automobile accident. The contemporaneous police report indicated that JJ's vehicle was drivable following the accident. The police report further indicated that JJ was not injured and did not complain of any pain at the scene. In keeping with the fact that JJ was not seriously injured, JJ did not visit any hospital emergency room following the accident. To the extent that JJ experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, on June 8, 2022, Laurido purported to conduct an initial examination of JJ at Best Community. To the extent that Laurido performed the examination in the first instance, Laurido did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Laurido did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Laurido provided JJ with the false list of objectively unverifiable soft tissue injury "diagnoses" that Laurido provided to other Insureds. Furthermore, neither JJ's presenting problems, nor the treatment plan provided to JJ by Best Community and Laurido presented any risk of significant complications, morbidity, or mortality. To the contrary, JJ did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Best Community and Laurido consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to JJ. Even so, Best Community and Laurido billed GEICO for the initial examination using CPT

code 99204, and thereby falsely represented that Laurido engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(xi)   On September 14, 2022, an Insured named MA was involved in an automobile accident. The contemporaneous police report indicated that MA's vehicle was drivable following the accident. The police report further indicated that MA was not injured and did not complain of any pain at the scene. In keeping with the fact that MA was not seriously injured, MA did not visit any hospital emergency room following the accident. To the extent that MA experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, on September 20, 2022, Laurido purported to conduct an initial examination of MA at Best Community. To the extent that Laurido performed the examination in the first instance, Laurido did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Laurido did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Laurido provided MA with the false list of objectively unverifiable soft tissue injury "diagnoses" that Laurido provided to other Insureds. Furthermore, neither MA's presenting problems, nor the treatment plan provided to MA by Best Community and Laurido presented any risk of significant complications, morbidity, or mortality. To the contrary, MA did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Best Community and Laurido consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to MA. Even so, Best Community and Laurido billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Laurido engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(xii)   On March 9, 2023, an Insured named MV was involved in an automobile accident. The contemporaneous police report indicated that the airbags did not deploy. The police report further indicated that MV was not injured and did not complain of any pain at the scene. In keeping with the fact that MV was not seriously injured, MV did not visit any hospital emergency room following the accident. To the extent that MV experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, on March 10, 2023, Laurido purported to conduct an initial examination of MV at Best Community. To the extent that Laurido performed the examination in the first instance, Laurido did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Laurido did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Laurido provided MV with the false list of objectively unverifiable soft tissue injury "diagnoses" that Laurido provided to other Insureds. Furthermore, neither MV's presenting problems, nor the treatment plan provided to MV by Best Community, Laurido, and Blanco presented any risk of significant complications, morbidity, or mortality. To the contrary, MV did not

need any significant treatment at all as a result of the accident, and the treatment plan provided by Best Community, Laurido, and Blanco consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to MV. Even so, Best Community, Laurido, and Blanco billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Laurido engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(xiii)   On August 21, 2023, an Insured named CT was involved in an automobile accident. The contemporaneous police report indicated that CT's vehicle was drivable following the accident. The police report further indicated that CT was not injured and did not complain of any pain at the scene. In keeping with the fact that CT was not seriously injured, CT did not visit any hospital emergency room following the accident. To the extent that CT experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, on September 1, 2023, Batista purported to conduct an initial examination of CT at Simple Therapy. To the extent that Batista performed the examination in the first instance, Batista did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Batista did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Batista provided CT with the false list of objectively unverifiable soft tissue injury "diagnoses" that Batista provided to other Insureds. Furthermore, neither CT's presenting problems, nor the treatment plan provided to CT by Simple Therapy, Marin, Wahood, and Batista presented any risk of significant complications, morbidity, or mortality. To the contrary, CT did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Simple Therapy, Marin, Wahood, and Batista consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to CT. Even so, Simple Therapy, Marin, and Wahood billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Batista engaged in some legitimate, low complexity medical decision-making during the purported examination.

(xiv)   On March 30, 2024, an Insured named CR was involved in an automobile accident. The contemporaneous police report indicated that CR's vehicle was drivable following the accident. The police report further indicated that CR was not injured and did not complain of any pain at the scene. In keeping with the fact that CR was not seriously injured, CR did not visit any hospital emergency room following the accident. To the extent that CR experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, on April 9, 2024, Laurido purported to conduct an initial examination of CR at Best Community. To the extent that Laurido performed the examination in the first instance, Laurido did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Laurido did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Laurido provided CR with the false list

of objectively unverifiable soft tissue injury "diagnoses" that Laurido provided to other Insureds. Furthermore, neither CR's presenting problems, nor the treatment plan provided to CR by Best Community, Laurido, and Blanco presented any risk of significant complications, morbidity, or mortality. To the contrary, CR did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Best Community, Laurido, and Blanco consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to CR. Even so, Best Community, Laurido, and Blanco billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Laurido engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(xv)     On March 30, 2024, an Insured named AR was involved in an automobile accident. The contemporaneous police report indicated that AR's vehicle was drivable following the accident. The police report further indicated that AR was not injured and did not complain of any pain at the scene. In keeping with the fact that AR was not seriously injured, AR did not visit any hospital emergency room following the accident. To the extent that AR experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, on April 9, 2024, Laurido purported to conduct an initial examination of AR at Best Community. To the extent that Laurido performed the examination in the first instance, Laurido did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Laurido did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Laurido provided AR with the false list of objectively unverifiable soft tissue injury "diagnoses" that Laurido provided to other Insureds. Furthermore, neither AR's presenting problems, nor the treatment plan provided to AR by Best Community, Laurido, and Blanco presented any risk of significant complications, morbidity, or mortality. To the contrary, AR did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Best Community, Laurido, and Blanco consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to AR. Even so, Best Community, Laurido, and Blanco billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Laurido engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(xvi)    On March 30, 2024, an Insured named GR was involved in an automobile accident. The contemporaneous police report indicated that GR's vehicle was drivable following the accident. The police report further indicated that GR was not injured and did not complain of any pain at the scene. In keeping with the fact that GR was not seriously injured, GR did not visit any hospital emergency room following the accident. To the extent that GR experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, on April 9, 2024, Laurido purported to conduct an initial examination of GR at Best Community. To the extent that Laurido performed the examination in the first instance, Laurido did not

retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Laurido did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Laurido provided GR with the false list of objectively unverifiable soft tissue injury "diagnoses" that Laurido provided to other Insureds. Furthermore, neither GR's presenting problems, nor the treatment plan provided to GR by Best Community, Laurido, and Blanco presented any risk of significant complications, morbidity, or mortality. To the contrary, GR did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Best Community, Laurido, and Blanco consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to GR. Even so, Best Community, Laurido, and Blanco billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Laurido engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(xvii)   On March 30, 2024, an Insured named AR was involved in an automobile accident. The contemporaneous police report indicated that AR's vehicle was drivable following the accident. The police report further indicated that AR was not injured and did not complain of any pain at the scene. In keeping with the fact that AR was not seriously injured, AR did not visit any hospital emergency room following the accident. To the extent that AR experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, on April 9, 2024, Laurido purported to conduct an initial examination of AR at Best Community. To the extent that Laurido performed the examination in the first instance, Laurido did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Laurido did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Laurido provided AR with the false list of objectively unverifiable soft tissue injury "diagnoses" that Laurido provided to other Insureds. Furthermore, neither AR's presenting problems, nor the treatment plan provided to AR by Best Community, Laurido, and Blanco presented any risk of significant complications, morbidity, or mortality. To the contrary, AR did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Best Community, Laurido, and Blanco consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to AR. Even so, Best Community, Laurido, and Blanco billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Laurido engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(xviii)   On April 21, 2024, an Insured named JR was involved in an automobile accident. The contemporaneous police report indicated that JR's vehicle was drivable following the accident. The police report further indicated that JR was not injured and did not complain of any pain at the scene. In keeping with the fact that JR was not seriously injured, JR did not visit any hospital emergency room following the

accident. To the extent that JR experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, on April 23, 2024, Laurido purported to conduct an initial examination of JR at Best Community. To the extent that Laurido performed the examination in the first instance, Laurido did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Laurido did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Laurido provided JR with the false list of objectively unverifiable soft tissue injury "diagnoses" that Laurido provided to other Insureds. Furthermore, neither JR's presenting problems, nor the treatment plan provided to JR by Best Community, Laurido, and Blanco presented any risk of significant complications, morbidity, or mortality. To the contrary, JR did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Best Community, Laurido, and Blanco consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to JR. Even so, Best Community, Laurido, and Blanco billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Laurido engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(xix)   On April 21, 2024, an Insured named WR was involved in an automobile accident. The contemporaneous police report indicated that WR's vehicle was drivable following the accident. The police report further indicated that WR was not injured and did not complain of any pain at the scene. In keeping with the fact that WR was not seriously injured, WR did not visit any hospital emergency room following the accident. To the extent that WR experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, on April 23, 2024, Laurido purported to conduct an initial examination of WR at Best Community. To the extent that Laurido performed the examination in the first instance, Laurido did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Laurido did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Laurido provided WR with the false list of objectively unverifiable soft tissue injury "diagnoses" that Laurido provided to other Insureds. Furthermore, neither WR's presenting problems, nor the treatment plan provided to WR by Best Community, Laurido, and Blanco presented any risk of significant complications, morbidity, or mortality. To the contrary, WR did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Best Community, Laurido, and Blanco consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to WR. Even so, Best Community, Laurido, and Blanco billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Laurido engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(xx)     On April 21, 2024, an Insured named AR was involved in an automobile accident. The contemporaneous police report indicated that AR's vehicle was drivable following the accident. The police report further indicated that AR was not injured and did not complain of any pain at the scene. In keeping with the fact that AR was not seriously injured, AR did not visit any hospital emergency room following the accident. To the extent that AR experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, on April 23, 2024, Laurido purported to conduct an initial examination of AR at Best Community. To the extent that Laurido performed the examination in the first instance, Laurido did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Laurido did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Laurido provided AR with the false list of objectively unverifiable soft tissue injury "diagnoses" that Laurido provided to other Insureds. Furthermore, neither AR's presenting problems, nor the treatment plan provided to AR by Best Community, Laurido, and Blanco presented any risk of significant complications, morbidity, or mortality. To the contrary, AR did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Best Community, Laurido, and Blanco consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to AR. Even so, Best Community, Laurido, and Blanco billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Laurido engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(xxi)    On May 23, 2024, an Insured named MC was involved in an automobile accident. The contemporaneous police report indicated that MC's vehicle was drivable following the accident. The police report further indicated that MC was not injured and did not complain of any pain at the scene. Nonetheless, later that same day, MC travelled on her own to Florida Westside Hospital Emergency Department. The contemporaneous hospital records indicated that MC complained of should and neck pain. The contemporaneous hospital records indicated that MC was briefly observed on an outpatient basis and then discharged with a routine shoulder pain and whiplash diagnosis. To the extent that MC experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, on June 3, 2024, Laurido purported to conduct an initial examination of MC at Best Community. To the extent that Laurido performed the examination in the first instance, Laurido did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Laurido did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Laurido provided MC with the false list of objectively unverifiable soft tissue injury "diagnoses" that Laurido provided to other Insureds. Furthermore, neither MC's presenting problems, nor the treatment plan provided to MC by Best Community, Laurido, and Blanco presented any risk of significant complications, morbidity, or mortality. To the contrary, MC did not need any significant treatment at all as a

40

result of the accident, and the treatment plan provided by Best Community, Laurido, and Blanco consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to MC. Even so, Best Community, Laurido, and Blanco billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that Laurido engaged in some legitimate, moderate complexity medical decision-making during the purported examination.

(xxii) On February 4, 2025, an Insured named DS was involved in an automobile accident. The contemporaneous police report indicated that DS's vehicle was drivable following the accident. The police report further indicated that DS was not injured and did not complain of any pain at the scene. In keeping with the fact that DS was not seriously injured, DS did not visit any hospital emergency room following the accident. To the extent that DS experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, on February 13, 2025, Barreto purported to conduct an initial examination of DS at Simple Therapy. To the extent that Barreto performed the examination in the first instance, Barreto did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Barreto did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Barreto provided DS with the false list of objectively unverifiable soft tissue injury "diagnoses" that Barreto provided to other Insureds. Furthermore, neither DS's presenting problems, nor the treatment plan provided to DS by Simple Therapy, Marin, Blanco, and Barreto presented any risk of significant complications, morbidity, or mortality. To the contrary, DS did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Simple Therapy, Marin, Blanco, and Barreto consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to DS. Even so, Simple Therapy, Marin, and Blanco billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Barreto engaged in some legitimate, low complexity medical decision-making during the purported examination.

(xxiii) On April 5, 2025, an Insured named YL was involved in an automobile accident. The contemporaneous police report indicated that YL's vehicle was drivable following the accident. The police report further indicated that YL was not injured and did not complain of any pain at the scene. In keeping with the fact that YL was not seriously injured, YL did not visit any hospital emergency room following the accident. To the extent that YL experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, on April 8, 2025, Barreto purported to conduct an initial examination of YL at Simple Therapy. To the extent that Barreto performed the examination in the first instance, Barreto did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Barreto did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Barreto provided YL with the false list of objectively unverifiable soft tissue injury "diagnoses" that Barreto provided to

other Insureds. Furthermore, neither YL's presenting problems, nor the treatment plan provided to YL by Simple Therapy, Marin, Blanco, and Barreto presented any risk of significant complications, morbidity, or mortality. To the contrary, YL did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Simple Therapy, Marin, Blanco, and Barreto consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to YL. Even so, Simple Therapy, Marin, and Blanco billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Barreto engaged in some legitimate, low complexity medical decision-making during the purported examination.

(xxiv) On July 7, 2025, an Insured named GS was involved in an automobile accident. The contemporaneous police report indicated that GS's vehicle was drivable following the accident. The police report further indicated that GS was not injured and did not complain of any pain at the scene. In keeping with the fact that GS was not seriously injured, GS did not visit any hospital emergency room following the accident. To the extent that GS experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, on July 8, 2025, Barreto purported to conduct an initial examination of GS at Simple Therapy. To the extent that Barreto performed the examination in the first instance, Barreto did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Barreto did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Barreto provided GS with the false list of objectively unverifiable soft tissue injury "diagnoses" that Barreto provided to other Insureds. Furthermore, neither GS's presenting problems, nor the treatment plan provided to GS by Simple Therapy, Marin, Blanco, and Barreto presented any risk of significant complications, morbidity, or mortality. To the contrary, GS did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Simple Therapy, Marin, Blanco, and Barreto consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to GS. Even so, Simple Therapy, Marin, and Blanco billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Barreto engaged in some legitimate, low complexity medical decision-making during the purported examination.

(xxv) On July 7, 2025, an Insured named GM was involved in an automobile accident. The contemporaneous police report indicated that GM's vehicle was drivable following the accident. GM did not visit any hospital emergency room following the accident. To the extent that GM experienced any health issues at all as the result of the accident, they were of minimal severity. Even so, on July 8, 2025, Barreto purported to conduct an initial examination of GM at Simple Therapy. To the extent that Barreto performed the examination in the first instance, Barreto did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Barreto did not consider any significant number of diagnoses or management options in

connection with the examination. Instead, Barreto provided GM with the false list of objectively unverifiable soft tissue injury "diagnoses" that Barreto provided to other Insureds. Furthermore, neither GM's presenting problems, nor the treatment plan provided to GM by Simple Therapy, Marin, Blanco, and Barreto presented any risk of significant complications, morbidity, or mortality. To the contrary, GM did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Simple Therapy, Marin, Blanco, and Barreto consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to GM. Even so, Simple Therapy, Marin, and Blanco billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Barreto engaged in some legitimate, low complexity medical decision-making during the purported examination.

143.    In keeping with the fact that these putative "diagnoses" were pre-determined and false, the Defendants frequently issued substantially similar, false "diagnoses", on or about the same date, to two or more Insureds who had been involved in the same underlying accident, and recommended a substantially similar course of medically unnecessary "treatment" to the Insureds, despite the fact that they were differently situated.

144.    For example:

(i)    On April 17, 2020, two Insureds – AM and YP – were involved in the same automobile accident. Thereafter, both Insureds presented at Simple Therapy for initial examinations by Occy on the exact same date, April 23, 2020. AM and YP were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that AM and YP suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Simple Therapy, Cordovi, Wahood, and Occy provided AM and YP with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(ii)   On July 31, 2020, two Insureds – MD and YD – were involved in the same automobile accident. Thereafter, both Insureds presented at Simple Therapy for initial examinations by Occy on the exact same date, August 6, 2020. MD and YD were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that MD and YD suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Simple Therapy, Cordovi, Wahood, and Occy provided MD and YD with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(iii)   On July 1, 2021, two Insureds – EB and MM – were involved in the same automobile accident. Thereafter, both Insureds presented at Simple Therapy for initial examinations by Occy on the exact same date, July 8, 2021. EB and MM were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that EB and MM suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Simple Therapy, Cordovi, Wahood, and Occy provided EB and MM with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(iv)   On August 27, 2021, two Insureds – BA and PG – were involved in the same automobile accident. Thereafter, both Insureds presented at Best Community for initial examinations by Laurido on the exact same date, August 30, 2021. BA and PG were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that BA and PG suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Best Community and Laurido provided BA and PG with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(v)   On November 26, 2021, two Insureds – BM and DS – were involved in the same automobile accident. Thereafter, both Insureds presented at Best Community for initial examinations by Laurido on the exact same date, December 2, 2021. BM and DS were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that BM and DS suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Best Community and Laurido provided BM and DS with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(vi)   On October 31, 2022, two Insureds – KP and JP – were involved in the same automobile accident. Thereafter, both Insureds presented at Best Community for initial examinations by Laurido on the exact same date, November 2, 2022. KP and JP were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that KP and JP suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Best Community and Laurido provided KP and JP with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(vii)   On July 1, 2023, two Insureds – AM and JR – were involved in the same automobile accident. Thereafter, both Insureds presented at Best Community for initial examinations by Laurido on the exact same date, July 5, 2023. AM and JR were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that AM and JR suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Best Community, Laurido, and Blanco provided AM and JR with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(viii)  On August 19, 2023, two Insureds – NE and DF – were involved in the same automobile accident. Thereafter, both Insureds presented at Best Community for initial examinations by Laurido on the exact same date, August 21, 2023. NE and DF were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that NE and DF suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Best Community, Laurido, and Blanco provided NE and DF with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(ix)    On March 22, 2024, two Insureds – JP and OM – were involved in the same automobile accident. Thereafter, both Insureds presented at Best Community for initial examinations by Laurido on the exact same date, March 28, 2024. JP and OM were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that JP and OM suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Best Community, Laurido, and Blanco provided JP and OM with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(x)     On March 30, 2024, three Insureds – AR, AR, and CR – were involved in the same automobile accident. Thereafter, all three Insureds presented at Best Community for initial examinations by Laurido on the exact same date, April 9, 2024. AR, AR, and CR were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that AR, AR, and CR suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Best Community, Laurido, and Blanco provided AR, AR, and CR with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to all three of them.

(xi)     On April 21, 2024, three Insureds – AR, JR, and WR – were involved in the same automobile accident. Thereafter, all three Insureds presented at Best Community for initial examinations by Laurido on the exact same date, April 23, 2024. AR, JR, and WR were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that AR, JR, and WR suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Best Community, Laurido, and Blanco provided AR, JR, and WR with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to all three of them.

(xii)    On May 26, 2024, three Insureds – AD, CD, and MO – were involved in the same automobile accident. Thereafter, CD and MO presented at Best Community for initial examinations by Laurido on the exact same date, May 29, 2024, and AD presented at Best Community for an initial examination by Laurido the next day, on May 30, 2024. AD, CD, and MO were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that AD, CD, and MO suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Best Community, Laurido, and Blanco provided AD, CD, and MO with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to all three of them.

(xiii)   On August 3, 2024, four Insureds – BR, JR, SR, and ZR – were involved in the same automobile accident. Thereafter, all four Insureds presented at Best Community for initial examinations by Laurido on the exact same date, August 5, 2024. BR, JR, SR, and ZR were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that BR, JR, SR, and ZR suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Best Community, Laurido, and Blanco provided BR, JR, SR, and ZR with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to all four of them.

(xiv)    On February 4, 2025, two Insureds – DE and LB – were involved in the same automobile accident. Thereafter, both Insureds presented at Simple Therapy for initial examinations by Blanco on the exact same date, February 13, 2025. DE and LB were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that DE and LB suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Simple Therapy, Marin, and Blanco provided DE and LB with

substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(xv)     On July 4, 2025, two Insureds – EO and SO – were involved in the same automobile accident. Thereafter, both Insureds presented at Simple Therapy for initial examinations by Blanco on the exact same date, July 8, 2025. EO and SO were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that EO and SO suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Simple Therapy, Marin, and Blanco provided EO and SO with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

145.     These are only representative examples. In the claims for initial examinations that are identified in Exhibits "1" and "2", the Defendants frequently caused similar "diagnoses" to be issued, on or about the same date, to more than one Insured involved in a single accident, and recommended a substantially similar course of medically unnecessary "treatment" to the Insureds, despite the fact that the Insureds were differently situated and, in any case, did not require the treatment.

146.     The Defendants routinely inserted these false "diagnoses" in their initial examination reports in order to create the false impression that the initial examinations required some legitimate medical decision-making, and in order to create a false justification for the other Fraudulent Services that the Defendants purported to provide to the Insureds.

147.     In the claims for initial examinations identified in Exhibits "1" and "2", the Defendants routinely falsely represented that the putative examinations involved legitimate, moderate or low complexity medical decision making in order to create a false basis to bill for the initial examinations under CPT codes 99204 or 99203, because examinations billable under CPT codes 99204 and 99203 are reimbursable at a higher rate than examinations or examinations that do not require any complex medical decision-making at all.

148.    In this context, Laurido – who at all relevant times purported to own Best Community – did not, and could not have, legitimately supervised the business activities of the Best Community.

149.    Had Laurido actually supervised the business activities of Best Community, she would have noted – among other things – that Best Community's billing routinely fraudulently misrepresented that the putative initial examinations were legitimately and lawfully performed.

150.    Laurido failed to do so, because she never actually supervised the business activities of Best Community.

151.    Similarly, Blanco – who purported to serve as the medical director of the Best Community Clinics between at least January 2023 and the present, and as the medical director of Simple Therapy between at least December 2023 and the present – did not, and could not have, legitimately served as the medical director of the Best Community Clinics or Simple Therapy.

152.    Had Blanco legitimately served as the medical director of the Best Community Clinics and Simple Therapy, he would have noted – among other things – that the Best Community Clinic's and Simple Therapy's billing routinely fraudulently misrepresented that the putative initial examinations were legitimately and lawfully performed.

153.    Likewise, Wahood – who purported to serve as the medical director of Simple Therapy between at least 2020 and October 2023 – did not, and could not have, legitimately served as the medical director of Simple Therapy.

154.    Had Wahood legitimately served as the medical director of Simple Therapy, he would have noted – among other things – that Simple Therapy's billing routinely fraudulently misrepresented that the putative initial examinations were legitimately and lawfully performed.

155. In the claims for initial examinations identified in Exhibits "1" and "2", the Defendants routinely fraudulently misrepresented that the examinations were lawfully provided and eligible for PIP reimbursement, when in fact they were neither lawfully provided nor reimbursable, because:

    (i)    the putative examinations were illusory, with outcomes that were pre-determined to result in substantially identical, false "diagnoses" and treatment recommendations, regardless of the Insureds' true individual circumstances and presentation;

    (ii)    the charges for the putative examinations misrepresented the nature, extent, and results of the examinations; and

    (iii)    Best Community and Simple Therapy never were eligible to collect PIP Benefits in connection with the examinations in the first instance, inasmuch as they were operated in violation of Florida law.

**2.    The Defendants' Fraudulent and Unlawful Charges for Follow-Up Examinations**

156. In addition to their fraudulent initial examinations, the Defendants purported to subject many of the Insureds in the claims identified in Exhibits "1" and "2" to fraudulent follow-up examinations during the course of their fraudulent treatment protocols.

157. Laurido, Botana, and Rodriguez purported to personally perform most of the follow-up examinations in the claims identified in Exhibit "1".

158. Blanco, Batista, and Occy purported to personally perform most of the follow-up examinations in the claims identified in Exhibit "2".

159. The purported follow-up examinations then were billed to GEICO in the following manner:

    (iii)    in the claims identified in Exhibit "1", Best Community, Laurido, and Blanco billed the follow-up examinations to GEICO under CPT codes 99211 and 99213, typically resulting in a charge of between $50.00 and $280.00 for each follow-up examination that they purported to provide.

(iv)     in the claims identified in Exhibit "2", Simple Therapy, Cordovi, Marin, Wahood, and Blanco billed the follow-up examinations to GEICO, or caused them to be billed to GEICO, under CPT codes 99213 and 99214, typically resulting in a charge of between $250.00 and $380.00 for each follow-up examination that they purported to provide.

160.     Pursuant to the CPT Assistant, at all relevant times the use of CPT code 99213 to bill for a follow-up examination represented that the physician engaged in medical decision-making of "low complexity".

161.     Pursuant to the CPT Assistant, at all relevant times the use of CPT code 99214 to bill for a follow-up examination represented that the physician engaged in medical decision-making of "moderate complexity".

162.     In the claims for follow-up examinations identified in Exhibits "1" and "2", the charges for the follow-up examinations were fraudulent in that they misrepresented the Defendants' eligibility to collect PIP Benefits in the first instance.

163.     In fact, and as set forth herein, the Defendants never were eligible to collect PIP Benefits, inasmuch as they were operated in violation of Florida law.

164.     The charges for the follow-up examinations identified in Exhibits "1" and "2" also were fraudulent in that they misrepresented the nature, extent, and results of the follow-up examinations.

165.     In particular, in the claims for follow-up examinations identified in Exhibit "1", neither Laurido, Botana, Rodriguez, nor any other health care practitioner associated with Best Community ever took any legitimate patient histories, conducted any legitimate physical examinations, or engaged in any legitimate medical decision-making at all.

166.     Likewise, in the claims for follow-up examinations identified in Exhibit "2", neither Blanco, Batista, Occy, nor any other health care practitioner associated with Simple Therapy ever

took any legitimate patient histories, conducted any legitimate physical examinations, or engaged in any legitimate medical decision-making at all.

167.    Rather, following the purported follow-up examinations, the examining health care practitioners – working at the Defendants' direction – simply: (i) reiterated the false, boilerplate "diagnoses" from the Insureds' initial examinations; and either (ii) referred the Insureds for even more medically unnecessary physical therapy services, despite the fact that the Insureds purportedly already had received extensive physical therapy services that supposedly had not been successful in resolving their purported pain symptoms; or (iii) discharged the Insureds from "treatment", to the extent that their PIP Benefits had been exhausted.

168.    The bogus "follow-up examinations" that the Defendants purported to provide to the Insureds in the claims identified in Exhibits "1" and "2" therefore were medically useless, and played no legitimate role in the treatment or care of the Insureds, because the putative "results" of the examinations were prearranged to comport with the medically unnecessary treatment plan that was pre-determined for each Insured from the moment they walked into the Defendants' offices.

169.    Additionally, Best Community, Laurido, and Blanco submitted hundreds of charges for follow-up examinations under CPT code 99211 contemporaneous with their supposed provision of physical therapy services.

170.    However, these supposed "examinations" were never truly separate services from the putative physical therapy services that were provided to the Insureds on the same dates as the supposed examinations.

171.    Instead, Best Community, Laurido, and Blanco billed GEICO for the illusory follow-up examinations under CPT code 99211 in order to maximize the fraudulent billing they submitted to GEICO.

172.    In keeping with the fact that the follow-up examinations purportedly provided contemporaneous with the physical therapy services were illusory, Best Community, Laurido, and Blanco never submitted any legitimate reports, notes, or any substantiating documentation whatsoever in connection with the phony follow-up examinations billed under CPT code 99211.

173.    Even so, Best Community, Laurido, and Blanco routinely submitted duplicative charges under CPT code 99211 for illusory follow-up examinations contemporaneous with charges for putative physical therapy services.

174.    For example:

(i)     Best Community and Laurido billed GEICO for purported follow-up examinations under CPT code 99211 that were supposedly provided to an Insured named JR contemporaneous with physical therapy services purportedly provided on thirty-two separate dates between March 2021 and May 2021. This, despite the fact that: (a) no legitimate, separate follow-up examinations were provided; and (b) to the extent that Best Community and Laurido provided any follow-up examinations at all, they were part and parcel of the physical therapy services billed under various CPT codes.

(ii)    Best Community and Laurido billed GEICO for purported follow-up examinations under CPT code 99211 that were supposedly provided to an Insured named MC contemporaneous with physical therapy services purportedly provided on thirty-two separate dates between April 2021 and May 2021. This, despite the fact that: (a) no legitimate, separate follow-up examinations were provided; and (b) to the extent that Best Community and Laurido provided any follow-up examinations at all, they were part and parcel of the physical therapy services billed under various CPT codes.

(iii)   Best Community and Laurido billed GEICO for purported follow-up examinations under CPT code 99211 that were supposedly provided to an Insured named LC contemporaneous with physical therapy services purportedly provided on twenty-four separate dates between December 2021 and May 2022. This, despite the fact that: (a) no legitimate, separate follow-up examinations were provided; and (b) to the extent that Best Community and Laurido provided any follow-up examinations at all, they were part and parcel of the physical therapy services billed under various CPT codes.

(iv)    Best Community and Laurido billed GEICO for purported follow-up examinations under CPT code 99211 that were supposedly provided to an Insured named AG contemporaneous with physical therapy services purportedly provided on twenty-

nine separate dates between February 2022 and May 2022. This, despite the fact that: (a) no legitimate, separate follow-up examinations were provided; and (b) to the extent that Best Community and Laurido provided any follow-up examinations at all, they were part and parcel of the physical therapy services billed under various CPT codes.

(v)     Best Community and Laurido billed GEICO for purported follow-up examinations under CPT code 99211 that were supposedly provided to an Insured named JJ contemporaneous with physical therapy services purportedly provided on twenty-eight separate dates between June 2022 and July 2022. This, despite the fact that: (a) no legitimate, separate follow-up examinations were provided; and (b) to the extent that Best Community and Laurido provided any follow-up examinations at all, they were part and parcel of the physical therapy services billed under various CPT codes.

(vi)    Best Community and Laurido billed GEICO for purported follow-up examinations under CPT code 99211 that were supposedly provided to an Insured named MA contemporaneous with physical therapy services purportedly provided on twenty-four separate dates between September 2022 and December 2022. This, despite the fact that: (a) no legitimate, separate follow-up examinations were provided; and (b) to the extent that Best Community and Laurido provided any follow-up examinations at all, they were part and parcel of the physical therapy services billed under various CPT codes.

(vii)   Best Community, Laurido, and Blanco billed GEICO for purported follow-up examinations under CPT code 99211 that were supposedly provided to an Insured named MA contemporaneous with physical therapy services purportedly provided on thirty separate dates between January 2023 and April 2023. This, despite the fact that: (a) no legitimate, separate follow-up examinations were provided; and (b) to the extent that Best Community, Laurido, and Blanco provided any follow-up examinations at all, they were part and parcel of the physical therapy services billed under various CPT codes.

(viii)  Best Community, Laurido, and Blanco billed GEICO for purported follow-up examinations under CPT code 99211 that were supposedly provided to an Insured named MB contemporaneous with physical therapy services purportedly provided on fifteen separate dates between January 2023 and April 2023. This, despite the fact that: (a) no legitimate, separate follow-up examinations were provided; and (b) to the extent that Best Community, Laurido, and Blanco provided any follow-up examinations at all, they were part and parcel of the physical therapy services billed under various CPT codes.

(ix)    Best Community, Laurido, and Blanco billed GEICO for purported follow-up examinations under CPT code 99211 that were supposedly provided to an Insured named RN contemporaneous with physical therapy services purportedly provided on eleven separate dates between March 2023 and April 2023. This, despite the fact

that: (a) no legitimate, separate follow-up examinations were provided; and (b) to the extent that Best Community, Laurido, and Blanco provided any follow-up examinations at all, they were part and parcel of the physical therapy services billed under various CPT codes.

(x)     Best Community, Laurido, and Blanco billed GEICO for purported follow-up examinations under CPT code 99211 that were supposedly provided to an Insured named MV contemporaneous with physical therapy services purportedly provided on twenty-three separate dates between March 2023 and May 2023. This, despite the fact that: (a) no legitimate, separate follow-up examinations were provided; and (b) to the extent that Best Community, Laurido, and Blanco provided any follow-up examinations at all, they were part and parcel of the physical therapy services billed under various CPT codes.

175.    These are only representative examples. Best Community, Laurido, and Blanco routinely submitted charges for illusory follow-up examinations under CPT code 99211.

176.    In the claims for follow-up examinations identified in Exhibits "1" and "2", the Defendants routinely fraudulently misrepresented that the examinations were lawfully provided and reimbursable, when in fact they were neither lawfully provided nor reimbursable, because:

(i)      the putative examinations were illusory, with outcomes that were pre-determined to result in substantially-identical, phony "diagnoses" and treatment recommendations, regardless of the Insureds' true individual circumstances and presentation;

(ii)     the charges for the putative examinations misrepresented the nature and extent of the examinations; and

(iii)    the Defendants never were eligible to collect PIP Benefits in connection with the examinations in the first instance, inasmuch as they operated in violation of Florida law..

## 3.     The Defendants' Fraudulent and Unlawful Charges for "Physical Therapy" Services

177.    In addition to the fraudulent initial examinations and follow-up examinations, the Defendants almost always purported to subject the Insureds in the claims identified in Exhibits "1" and "2" to months of medically unnecessary physical therapy.

178.    The purported physical therapy services then were billed to GEICO in the following manner:

(i)    in the claims identified in Exhibit "1", Best Community, Laurido, and Blanco typically billed the purported physical therapy services to GEICO under CPT codes 97010, 97012, 97018, 97026, 97035, 97110, 97112, 97139, 97140, 97530, 97535, and Health Care Common Procedure Coding System ("HCCPCS") code G0283.

(ii)    in the claims identified in Exhibit "2", Simple Therapy, Cordovi, Marin, Wahood, and Blanco typically billed the purported physical therapy services to GEICO under CPT codes 97010, 97012, 97014, 97035, 97039, 97110, 97112, 97140, and G0283.

179.    In the claims for purported physical therapy services identified in Exhibits "1" and "2", the charges for the physical therapy services were fraudulent in that they misrepresented the Defendants' eligibility to collect PIP Benefits in the first instance.

180.    In fact, and as set forth above, the Defendants never were eligible to collect PIP Benefits, because of their fraudulent and unlawful activities, including violations of the Clinic Act, the False and Fraudulent Insurance Claims Statute, the Physical Therapy Act, and the No-Fault Law.

181.    What is more, in a legitimate clinical setting, the individual physical therapy services that are provided to an individual patient should be tailored to that patient's individual circumstances and presentation.

182.    In keeping with the fact that the purported physical therapy services that were billed through the Defendants to GEICO were not medically necessary, the Defendants did not tailor the physical therapy services they purported to provide to each Insured's individual circumstances and presentation.

183.    There are a large number of individual types of physical therapy services that potentially can be provided to a patient, depending on the patient's individual symptomatology and needs.

184.    However, the Defendants routinely purported to provide the same handful of physical therapy "treatments" to the Insureds in the claims identified in Exhibits "1" and "2", without regard for the Insureds' individual circumstances.

185.    In the claims for physical therapy services identified in Exhibits "1" and "2", the Defendants routinely fraudulently misrepresented that the services were lawfully provided and reimbursable, when in fact they were neither lawfully provided nor reimbursable, because:

(i)     the services were medically unnecessary, and were provided without regard for the Insureds' true individual circumstances and presentation;

(ii)    the services were performed – to the extent that they were performed at all – by massage therapists and unlicensed/unsupervised individuals;

(iii)   the billing for the services misrepresented the identities of the actual treating practitioners; and

(iv)    the Defendants never were eligible to collect PIP Benefits in connection with the services in the first instance, inasmuch as they unlawfully operated in violation of Florida law.

**4.      The Fraudulent Charges for PENS Treatments at Best Community**

186.    Pursuant to the false, boilerplate diagnosis that they provided to almost every Insured at the conclusion of their purported examinations, Best Community, Laurido, and Blanco purported to provide many Insureds with a large number of medically unnecessary PENS treatments.

187.    Best Community, Laurido, and Blanco then billed the PENS treatment to GEICO under CPT code 64999, typically resulting in charges of $650.00, per Insured, for each date of service on which they purported to provide the PENS treatment.

56

188.    Like all of the other Fraudulent Services that Best Community, Laurido, and Blanco purported to provide, the charges for the PENS treatments were fraudulent in that they falsely represented that Best Community was entitled to payment in the first place, when in fact it was not because it operated in violation of Florida law.

189.    The charges for the PENS treatments also were fraudulent in that they were medically unnecessary and were performed – to the extent that they were performed at all – pursuant to Best Community, Laurido, and Blanco's predetermined fraudulent protocol.

190.    In a legitimate clinical setting, PENS is a procedure that combines the features of electro-acupuncture and transcutaneous electrical nerve stimulation, whereby electrical current is applied through the skin to provide patients with pain control. PENS treatments are administered through fine needle-like electrodes that are placed in close proximity to the painful area and stimulate peripheral sensory nerves in the soft tissue.

191.    According to guidelines published by the CMS, if pain is effectively controlled through PENS, then implantation of electrodes is warranted.

192.    CMS further instructs that physicians generally should be able to determine whether a patient is likely to derive a significant therapeutic benefit from continuing use of implanted electrodes within a one-month trial period.

193.    CMS also instructs that a patient can be taught how to utilize implanted electrodes and, once this is accomplished, can use them safely and effectively without physician supervision. As a result, it is inappropriate for a patient to visit their physician, physical therapist, or an outpatient clinic on a continuing basis for treatment of pain with PENS treatments.

194.    Even so, Best Community, Laurido, and Blanco routinely purported to provide large amounts of medically unnecessary PENS treatments to Insureds on an outpatient basis, in

order to maximize the amount of fraudulent and unlawful billing they could submit to GEICO and other insurers.

195. Moreover, to the extent that Best Community, Laurido, and Blanco actually provided any electrical stimulation treatments to Insureds in the first instance, the treatments consisted of ordinary electrical stimulation, not legitimate PENS treatments

196. Electrical stimulation treatments are billable at a lower rate than PENS treatments.

197. Best Community, Laurido, and Blanco deliberately misrepresented the electrical stimulation treatments they purported to provide to be PENS treatments in a calculated attempt to overcharge GEICO for the electrical stimulation treatments.

**5.     The Fraudulent and Unlawful Charges for Shockwave Therapy at Best Community**

198. Based upon the false, boilerplate "diagnoses" that the Insureds received during the purported examinations at Best Community, Best Community, Laurido, and Blanco also purported to subject many of the Insureds in the claims identified in Exhibit "1" to one or more sessions of shockwave therapy during the course of their fraudulent treatment protocol.

199. Typically, Laurido, Botana, and Rodriguez purported to perform shockwave therapy in the claims identified in Exhibit "1".

200. As set forth in Exhibit "1", Best Community, Laurido, and Blanco then billed the shockwave therapy to GEICO, or caused them to be billed to GEICO, under CPT code 0101T, typically resulting in a charge of $675.00 for each round of shockwave therapy that was purportedly provided.

201. Like the charges for the other Fraudulent Services, the charges for shockwave therapy were fraudulent in that the shockwave therapy was medically unnecessary.

202.     In keeping with the fact that the shockwave therapy "treatments" were medically unnecessary, shockwave therapy has not been approved by the U.S. Food and Drug Administration ("FDA") for the treatment of back, neck, or shoulder pain; Palmetto, a contractor for the CMS, has published coverage guidance stating that shockwave therapy is neither reasonable nor necessary for the treatment of musculoskeletal conditions; and there are no legitimate peer reviewed data that establish the effectiveness of shockwave therapy for the treatment of back, neck, or shoulder pain.

203.     Even so, Best Community, Laurido, and Blanco routinely purported to provide medically unnecessary shockwave therapy to Insureds pursuant to their pre-determined fraudulent treatment protocol without regard to each Insured's individual complaints, symptoms, or presentation.

204.     For example:

(i)      On or about April 3, 2024, Best Community, Laurido, and Blanco billed GEICO for medically unnecessary shockwave therapy purportedly provided by Laurido to an Insured named DA on March 13, 2024.

(ii)     On or about April 17, 2024, Best Community, Laurido, and Blanco billed GEICO for medically unnecessary shockwave therapy purportedly provided by Laurido to an Insured named JP on April 2, 2024.

(iii)    On or about January 13, 2025, Best Community, Laurido, and Blanco billed GEICO for medically unnecessary shockwave therapy purportedly provided by Laurido to an Insured named WR on January 6, 2025.

(iv)     On or about April 2, 2025, Best Community, Laurido, and Blanco billed GEICO for medically unnecessary shockwave therapy purportedly provided by Botana to an Insured named CB on March 11, 2025.

(v)      On or about April 8, 2025, Best Community, Laurido, and Blanco billed GEICO for medically unnecessary shockwave therapy purportedly provided by Botana to an Insured named LS on March 17, 2025.

(vi)     On or about April 18, 2025, Best Community, Laurido, and Blanco billed GEICO for medically unnecessary shockwave therapy purportedly provided by Rodriguez to an Insured named MB on April 2, 2025.

(vii)    On or about May 6, 2025, Best Community, Laurido, and Blanco billed GEICO for medically unnecessary shockwave therapy purportedly provided by Rodriguez to an Insured named DM on April 11, 2025.

(viii)   On or about May 6, 2025, Best Community, Laurido, and Blanco billed GEICO for medically unnecessary shockwave therapy purportedly provided by Botana to an Insured named JG on April 25, 2025.

(ix)     On or about May 6, 2025, Best Community, Laurido, and Blanco billed GEICO for medically unnecessary shockwave therapy purportedly provided by Botana to an Insured named JG on May 2, 2025.

(x)      On or about May 13, 2025, Best Community, Laurido, and Blanco billed GEICO for medically unnecessary shockwave therapy purportedly provided by Rodriguez to an Insured named DD on April 16, 2025.

205.    These are only representative examples. In the claims for shockwave therapy identified in Exhibit "1", Best Community, Laurido, and Blanco routinely billed GEICO for medically unnecessary shockwave therapy they purported to provide to Insureds.

## III.   The Fraudulent Claims the Defendants Submitted or Caused to be Submitted to GEICO

206.    To support their fraudulent charges, the Defendants systematically submitted or caused to be submitted thousands of HCFA-1500 forms and treatment reports to GEICO seeking payment for the Fraudulent Services for which the Defendants were not entitled to receive payment.

207.    The claims that the Defendants submitted or caused to be submitted to GEICO were false and misleading in the following, material respects:

(i)      The HCFA-1500 forms and treatment reports submitted or caused to be submitted by the Defendants misrepresented to GEICO that the Defendants were in compliance with Florida law, and therefore were eligible to collect PIP Benefits in the first instance. In fact, the Defendants never were in compliance with Florida law, and never were eligible to collect PIP Benefits, because of the fraudulent and unlawful scheme described here.

(ii)     The HCFA-1500 forms and treatment reports submitted or caused to be submitted by the Defendants misrepresented to GEICO that the Fraudulent Services were

lawfully provided and eligible for PIP reimbursement. In fact, the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement, because: (a) they were medically unnecessary and provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed to financially enrich the Defendants, rather than to provide medically necessary treatment to the Insureds who purportedly were subjected to them; (b) they were provided – to the extent that they were provided at all – in pervasive violation of the Clinic Act, the False and Fraudulent Insurance Claims Statute, the Physical Therapy Act, and the No-Fault Law; and (c) in many cases, they were unlawfully performed – to the extent that they were performed at all – by massage therapists and unlicensed/unsupervised individuals.

(iii)    The HCFA-1500 forms and treatment reports submitted or caused to be submitted by the Defendants uniformly misrepresented to GEICO that the Fraudulent Services were medically necessary and, in many cases, misrepresented to GEICO that the Fraudulent Services actually were performed. In fact, the Fraudulent Services frequently were not performed at all and, to the extent that they were performed, they were not medically necessary and were performed as part of a pre-determined fraudulent treatment and billing protocol designed to financially enrich the Defendants, not to benefit the Insureds who supposedly were subjected to them.

(iv)    The HCFA-1500 forms and treatment reports submitted or caused to be submitted by and on behalf of the Defendants uniformly misrepresented and exaggerated the nature, extent, and results of the Fraudulent Services that purportedly were provided.

## IV.    The Defendants' Fraudulent Concealment and GEICO's Justifiable Reliance

208.    The Defendants were legally and ethically obligated to act honestly and with integrity in connection with their performance of the Fraudulent Services and their submission of charges to GEICO.

209.    To induce GEICO to promptly pay the fraudulent charges for the Fraudulent Services, the Defendants have systemically concealed their fraud and have gone to great lengths to accomplish this concealment.

210.    The Defendants knowingly misrepresented and concealed facts related to Best Community, Simple Therapy, and the Fraudulent Services in an effort to prevent discovery that

Best Community and Simple Therapy were operated in violation of the Clinic Act, the False and Fraudulent Insurance Claims Statute, the No-Fault Law and the Physical Therapy Act.

211.    Furthermore, the Defendants knowingly misrepresented and concealed facts in order to prevent GEICO from discovering that the Fraudulent Services were medically unnecessary and were performed – to the extent that they were performed at all – pursuant to a fraudulent pre-determined protocol designed to maximize the charges that could be submitted, not to benefit the Insureds who supposedly were subjected to them.

212.    Moreover, the Defendants knowingly misrepresented and concealed facts in order to prevent GEICO from discovering that the Fraudulent Services frequently never were performed in the first instance.

213.    For instance, the Defendants submitted facially valid HCFA-1500 forms, which purported to be signed and verified by properly licensed health care providers, in support of their fraudulent charges, and GEICO had a right to rely on this facially-valid billing.

214.    The Defendants have hired law firms to pursue collection of the fraudulent charges for the Fraudulent Services from GEICO and other insurers. These law firms routinely file expensive and time-consuming litigation against GEICO and other insurers if the charges are not promptly paid in full.

215.    GEICO is under statutory and contractual obligations to promptly and fairly process claims within 30 days. The facially-valid documents submitted to GEICO in support of the fraudulent charges at issue, combined with the material misrepresentations and acts of concealment described above, were designed to and did cause GEICO to rely upon them. As a result, GEICO has incurred damages of more than $2,000,000.00.

216.     Based upon the Defendants' material misrepresentations and other affirmative acts to conceal their fraud from GEICO, GEICO did not discover and could not reasonably have discovered that its damages were attributable to fraud until shortly before it filed this Complaint.

### FIRST CAUSE OF ACTION
**Against Best Community**
**(Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)**

217.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-216, above.

218.     There is an actual case in controversy between GEICO and Best Community regarding more than $75,000.00 in pending fraudulent claims for the Fraudulent Services that have been submitted to GEICO.

219.     Best Community has no right to receive payment for any pending bills submitted to GEICO because it unlawfully was operated in violation of Florida law.

220.     Best Community has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not lawfully provided and billed to GEICO.

221.     Best Community has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed to financially enrich the Defendants, rather than to provide medically necessary treatment to the Insureds who purportedly were subjected to them.

222.     Best Community has no right to receive payment for any pending bills submitted to GEICO because, in many cases, the Fraudulent Services never were provided in the first instance.

223.     Best Community has no right to receive payment for any pending bills submitted to GEICO because the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

224.     Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Best Community has no right to receive payment for any pending bills submitted to GEICO.

### SECOND CAUSE OF ACTION
**Against Laurido**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

225.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-216, above.

226.     Best Community is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

227.     Laurido knowingly has conducted and/or participated, directly or indirectly, in the conduct of the Best Community's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over five years seeking payments that Best Community was not eligible to receive under the No-Fault Law because: (i) Best Community unlawfully was operated in violation of the Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed to financially enrich the Defendants, rather than to provide medically necessary treatment to the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services

never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

228.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the charts annexed hereto as Exhibit "1".

229.    Best Community's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Laurido operated Best Community, inasmuch as Best Community was not engaged in legitimate health care practice, and acts of mail fraud therefore were essential in order for Best Community to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through Best Community to the present day.

230.    Best Community is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Best Community in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

231.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $1,814,000.00 pursuant to the fraudulent bills submitted through Best Community.

232.     By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

### THIRD CAUSE OF ACTION
**Against Laurido and Blanco**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

233.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-216, above.

234.     Best Community is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

235.     Laurido and Blanco knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of Best Community's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over five years seeking payments that Best Community was not entitled to receive under the No-Fault Laws because: (i) Best Community unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to provide medically necessary treatment to the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

66

236.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the charts annexed hereto as Exhibit "1". Each such mailing was made in furtherance of the mail fraud scheme.

237.    Best Community's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Laurido has operated Best Community, inasmuch as Best Community is not engaged in a legitimate chiropractic practice, and acts of mail fraud therefore are essential in order for Best Community to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to submit fraudulent billing to GEICO, and continue to attempt collection on the fraudulent billing submitted through Best Community to the present day.

238.    Best Community is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Best Community in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent No-Fault billing.

239.    Laurido and Blanco knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

240.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $1,814,000.00 pursuant to the fraudulent bills submitted through Best Community.

241.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

### FOURTH CAUSE OF ACTION
#### Against Laurido, Blanco, and Best Community
#### (Common Law Fraud)

242.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-216, above.

243.    Laurido, Blanco, and Best Community intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills through Best Community for the Fraudulent Services.

244.    The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that that the Defendants were in compliance with Florida law, and eligible to collect PIP Benefits in the first instance, when in fact the Defendants were not; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement; (iii) in every claim, the representation that the Fraudulent Services were medically necessary, when in fact they were not medically necessary; and (iv) in many claims, the representation that the Fraudulent Services actually were performed, when in many cases they were not actually performed.

245.    The Defendants intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Best Community that were not reimbursable.

246.     GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $1,814,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted through Best Community.

247.     The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

248.     Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**FIFTH CAUSE OF ACTION**
**Against Laurido, Blanco, and Best Community**
**(Under Fla. Stat. § 501.201 et. seq.)**

249.     GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-216, above.

250.     Laurido, Blanco, and Best Community are actively engaged in trade and commerce in the State of Florida.

251.     GEICO and its Insureds are "consumers" as defined by Fla. Stat. § 501.203.

252.     Laurido, Blanco, and Best Community engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally-obtain PIP Benefits from GEICO.

253.     The claims and supporting documents submitted to GEICO in connection with the Fraudulent Services were unfair, deceptive, and unconscionable in that they misrepresented: (i) that the Defendants were in compliance with Florida law, and eligible to collect PIP Benefits in the first instance, when in fact the Defendants were not; (ii) that the Fraudulent Services were

lawfully provided and eligible for PIP reimbursement, when in fact the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement; (iii) that the Fraudulent Services were medically necessary, when in fact they were not medically necessary; and (iv) that the Fraudulent Services actually were performed, when in many cases they were not actually performed.

254.     Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous.  Additionally, the conduct of Laurido, Blanco, and Best Community has been materially injurious to GEICO and its Insureds.

255.     The conduct of Laurido, Blanco, and Best Community was the actual and proximate cause of the damages sustained by GEICO.

256.     Laurido, Blanco, and Best Community's unfair and deceptive acts have caused GEICO to sustain damages of at least $1,814,000.00.

257.     By reason of Laurido, Blanco, and Best Community's conduct, GEICO is also entitled to recover costs, and reasonable attorneys' fees.

**SIXTH CAUSE OF ACTION**
**Against Laurido, Blanco, and Best Community**
**(Unjust Enrichment)**

258.     GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-216, above.

259.     As set forth above, Laurido, Blanco, and Best Community have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

260.     When GEICO paid the bills and charges submitted or caused to be submitted by Laurido and Blanco through Best Community, it reasonably believed that it was legally obligated

to make such payments based on Laurido, Blanco, and Best Community's improper, unlawful, and/or unjust acts.

261.     Laurido, Blanco, and Best Community have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that Laurido, Blanco, and Best Community voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

262.     Laurido, Blanco, and Best Community's retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

263.     By reason of the above, Laurido, Blanco, and Best Community have been unjustly enriched in an amount to be determined at trial, but in no event less than $1,814,000.00.

**SEVENTH CAUSE OF ACTION**
**Against Simple Therapy**
**(Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)**

264.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-216, above.

265.     There is an actual case in controversy between GEICO and Simple Therapy regarding more than $75,000.00 in pending fraudulent claims for the Fraudulent Services that have been submitted to GEICO.

266.     Simple Therapy has no right to receive payment for any pending bills submitted to GEICO because it unlawfully was operated in violation of Florida law.

267.     Simple Therapy has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not lawfully provided and billed to GEICO.

268.     Simple Therapy has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent

protocols designed to financially enrich the Defendants, rather than to provide medically necessary treatment to the Insureds who purportedly were subjected to them.

269.    Simple Therapy has no right to receive payment for any pending bills submitted to GEICO because, in many cases, the Fraudulent Services never were provided in the first instance.

270.    Simple Therapy has no right to receive payment for any pending bills submitted to GEICO because the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

271.    Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Simple Therapy has no right to receive payment for any pending bills submitted to GEICO.

### EIGHTH CAUSE OF ACTION
### Against Cordovi and Marin
### (Violation of RICO, 18 U.S.C. § 1962(c))

272.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-216, above.

273.    Simple Therapy is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

274.    Cordovi and Marin knowingly have conducted and/or participated, directly or indirectly, in the conduct of the Simple Therapy's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over five years seeking payments that Simple Therapy was not eligible to receive under the No-Fault Law because: (i) Simple Therapy unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or

billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed to financially enrich the Defendants, rather than to provide medically necessary treatment to the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

275.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the charts annexed hereto as Exhibit "2".

276.    Simple Therapy's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Cordovi and Marin operated Simple Therapy, inasmuch as Simple Therapy was not engaged in legitimate health care practice, and acts of mail fraud therefore were essential in order for Simple Therapy to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through Simple Therapy to the present day.

277.    Simple Therapy is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Simple Therapy in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

278. GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $263,000.00 pursuant to the fraudulent bills submitted through Simple Therapy.

279. By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

### NINTH CAUSE OF ACTION
#### Against Cordovi, Marin, Wahood, and Blanco
#### (Violation of RICO, 18 U.S.C. § 1962(d))

280. GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-216, above.

281. Simple Therapy is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

282. Cordovi, Marin, Wahood, and Blanco knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of Simple Therapy's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over five years seeking payments that Simple Therapy was not entitled to receive under the No-Fault Laws because: (i) Simple Therapy unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; and (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to provide medically necessary treatment to the Insureds who

purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

283.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the charts annexed hereto as Exhibit "2". Each such mailing was made in furtherance of the mail fraud scheme.

284.    Simple Therapy's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Cordovi and Marin have operated Simple Therapy, inasmuch as Simple Therapy is not engaged in a legitimate health care practice, and acts of mail fraud therefore are essential in order for Simple Therapy to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to submit fraudulent billing to GEICO, and continue to attempt collection on the fraudulent billing submitted through Simple Therapy to the present day.

285.    Simple Therapy is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Simple Therapy in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent No-Fault billing.

286.    Cordovi, Marin, Wahood, and Blanco knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

287.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $263,000.00 pursuant to the fraudulent bills submitted through Simple Therapy.

288.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

**TENTH CAUSE OF ACTION**
**Against Cordovi, Marin, Wahood, Blanco, and Simple Therapy**
**(Common Law Fraud)**

289.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-216, above.

290.    Cordovi, Marin, Wahood, Blanco, and Simple Therapy intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills through Simple Therapy for the Fraudulent Services.

291.    The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that that the Defendants were in compliance with Florida law, and eligible to collect PIP Benefits in the first instance, when in fact the Defendants were not; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement; and (iii) in every claim, the

representation that the Fraudulent Services were medically necessary, when in fact they were not medically necessary; and (iv) in many claims, the representation that the Fraudulent Services actually were performed, when in many cases they were not actually performed.

292.    The Defendants intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Simple Therapy that were not reimbursable.

293.    GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $263,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted through Simple Therapy.

294.    The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

295.    Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## ELEVENTH CAUSE OF ACTION
### Against Cordovi, Marin, Wahood, Blanco, and Simple Therapy
### (Under Fla. Stat. § 501.201 et. seq.)

296.    GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-216, above.

297.    Cordovi, Marin, Wahood, Blanco, and Simple Therapy are actively engaged in trade and commerce in the State of Florida.

298.    GEICO and its Insureds are "consumers" as defined by Fla. Stat. § 501.203.

299. Cordovi, Marin, Wahood, Blanco, and Simple Therapy engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally-obtain PIP Benefits from GEICO.

300. The claims and supporting documents submitted to GEICO in connection with the Fraudulent Services were unfair, deceptive, and unconscionable in that they misrepresented: (i) that the Defendants were in compliance with Florida law, and eligible to collect PIP Benefits in the first instance, when in fact the Defendants were not; (ii) that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement; (iii) that the Fraudulent Services were medically necessary, when in fact they were not medically necessary; and (iv) that the Fraudulent Services actually were performed, when in many cases they were not actually performed.

301. Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous. Additionally, the conduct of Cordovi, Marin, Wahood, Blanco, and Simple Therapy has been materially injurious to GEICO and its Insureds.

302. The conduct of Cordovi, Marin, Wahood, Blanco, and Simple Therapy was the actual and proximate cause of the damages sustained by GEICO.

303. Cordovi, Marin, Wahood, Blanco, and Simple Therapy's unfair and deceptive acts have caused GEICO to sustain damages of at least $263,000.00.

304. By reason of Cordovi, Marin, Wahood, Blanco, and Simple Therapy's conduct, GEICO is also entitled to recover costs, and reasonable attorneys' fees.

**TWELFTH CAUSE OF ACTION**
**Against Cordovi, Marin, Wahood, Blanco, and Simple Therapy**
**(Unjust Enrichment)**

305.    GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-216, above.

306.    As set forth above, Cordovi, Marin, Wahood, Blanco, and Simple Therapy have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

307.    When GEICO paid the bills and charges submitted or caused to be submitted by Cordovi, Marin, Wahood, and Blanco through Simple Therapy, it reasonably believed that it was legally obligated to make such payments based on Cordovi, Marin, Wahood, Blanco, and Simple Therapy's improper, unlawful, and/or unjust acts.

308.    Cordovi, Marin, Wahood, Blanco, and Simple Therapy have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that Cordovi, Marin, Wahood, Blanco, and Simple Therapy voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

309.    Cordovi, Marin, Wahood, Blanco, and Simple Therapy's retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

310.    By reason of the above, Cordovi, Marin, Wahood, Blanco, and Simple Therapy have been unjustly enriched in an amount to be determined at trial, but in no event less than $263,000.00.

## JURY DEMAND

311. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury.

**WHEREFORE**, Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. demand that a Judgment be entered in their favor:

A. On the First Cause of Action against Best Community, a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that Best Community has no right to receive payment for any pending bills submitted to GEICO;

B. On the Second Cause of Action against Laurido, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $1,814,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

C. On the Third Cause of Action against Laurido and Blanco, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $1,814,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

D. On the Fourth Cause of Action against Laurido, Blanco, and Best Community, compensatory damages in an amount to be determined at trial but in excess of $1,814,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

E. On the Fifth Cause of Action against Laurido, Blanco, and Best Community, compensatory damages in an amount to be determined at trial but in excess of $1,814,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. § 501.211(2); and

F.      On the Sixth Cause of Action against Laurido, Blanco, and Best Community, compensatory damages in an amount to be determined at trial but in excess of $1,814,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper.

G.      On the Seventh Cause of Action against Simple Therapy, a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that Simple Therapy has no right to receive payment for any pending bills submitted to GEICO;

H.      On the Eighth Cause of Action against Cordovi and Marin, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $263,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

I.      On the Ninth Cause of Action against Cordovi, Marin, Wahood, and Blanco, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $263,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

J.      On the Tenth Cause of Action against Cordovi, Marin, Wahood, Blanco, and Simple Therapy, compensatory damages in an amount to be determined at trial but in excess of $263,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

K.      On the Eleventh Cause of Action against Cordovi, Marin, Wahood, Blanco, and Simple Therapy, compensatory damages in an amount to be determined at trial but in excess of $263,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. § 501.211(2); and

L.      On the Twelfth Cause of Action against Cordovi, Marin, Wahood, Blanco, and Simple Therapy, compensatory damages in an amount to be determined at trial but in excess of $263,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper.

Dated:  March 5, 2026

*/s/ Max Gershenoff*_____
Max Gershenoff (FBN 1038855)
John P. Marino (FBN 814539)
Lindsey R. Trowell (FBN 678783)
Christina M. Bezas (FBN 1038951)
Kristen L. Wenger (FBN 92136)

**RIVKIN RADLER, LLP**
Riverplace Tower
1301 Riverplace Blvd., Suite 1000
Jacksonville, Florida 32207
Phone: (904) 791-8948
Facsimile: (904) 598-6225

-and-

926 RXR Plaza
Uniondale, New York 11556
Phone: (516) 357-3000
Facsimile: (516) 357-3333
Max.Gershenoff@rivkin.com
John.Marino@rivkin.com
Lindsey.Trowell@rivkin.com
Christina.Bezas@rivkin.com
Kristen.Wenger@rivkin.com
*Counsel for Plaintiffs*